### CLARKE v. ROGERS.

(Circuit Court of Appeals, First Circuit. December 13, 1910.)

No. 878.

1. BANKRUPTCY (§ 159*) — "PREFERENCE" — GENERAL NATURE — "CREDITOR" — "DEBT."

Nothing is within the purview of the provisions of Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), relating to preferences except with reference to debts which may be proved for a dividend, but, on the other hand, anything which may be proved is within the purview of such provisions.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 159.*

For other definitions, see Words and Phrases, vol. 6, pp. 5498–5499; vol. 8, p. 7759; vol. 2, pp. 1864–1886; vol. 8, p. 7628; vol. 2, pp. 1713–1727; vol. 8, pp. 7622–7623.]

2 BANKRUPTCY (§ 318*)—PROVABLE CLAIMS—IMPLIED CONTRACTS.

Independently of his bond, there is an obligation resting on a defaulting testamentary trustee to restore the value of the assets embezzled, which is of a contractual character, and affords a basis for proof of a claim against his estate in bankruptcy therefor by his successor in the trust; the court not following the English practice in this particular.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

3. BANKRUPTCY (§ 163*)—"PREFERENCE"—RESTORATION OF EMBEZZLED TRUST FUND.

A bankrupt was testamentary trustee of a number of estates from all of which he had embezzled funds. While insolvent, at the instance of the surety on one of his bonds, he deposited the remaining securities in his hands belonging to the estate with others to make up his shortage, and the same passed into the hands of his successor in the trust after his

bankruptcy. *Held*, that in equity the trustee occupies always a double capacity, so that as an individual he might theoretically be a debtor to himself as a trustee, and prefer himself as such; that, while there is no contract liability so long as there is no default, a contract liability arises on the default; and that consequently the transfer of such substituted securities constituted a preference, and they were recoverable by his trustee under Bankr. Act July 1, 1898, c. 541, § 60b, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 163.*]

Appeal from the District Court of the United States for the District of Massachusetts.

In the matter of Shaw, bankrupt. Appeal by George Lemist Clarke, trustee, from an order of the District Court. Affirmed.

Harrison M. Davis and Dunbar & Rackemann (Felix Rackemann, on the brief), for appellant.

Melvin M. Johnson and Johnson & North (A. Farley Brewer, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is an appeal from the final decree of the District Court as to the matter of an alleged preference in bankruptcy. The bankrupt, Shaw, was trustee of various testamentary trusts, as that expression is known in the statutes of Massachusetts, and which in accordance with those statutes were subject to the jurisdiction of the probate courts. It may be that he was trustee of other trusts, but it is not necessary for us to go into details in reference thereto. The appellee, Rogers, is trustee in bankruptcy of Shaw's estate. The appellant Clarke is testamentary trustee under the will of Samuel Parsons as successor of said Shaw in said trust. Rogers as such trustee in bankruptcy seeks to recover from Clarke as such testamentary trustee certain securities alleged to have been received as the result of a transaction which operated as an unlawful preference under the statutes in bankruptcy. The decision was in favor of Rogers as trustee in bankruptcy, and thereupon Clarke as such testamentary trustee appealed to us.

Beyond what we have stated, the facts are sufficiently covered by the opinion of the District Court, as follows:

"The material facts are not in dispute. In the referee's opinion, which accompanies his certificate, he has found them and fully set them forth. They may be stated in brief as follows: The bankrupt, being insolvent and knowing himself to be insolvent, was discovered by the surety on his bond, as trustee under the Parsons will, not to be in possession of some of the securities which formed a part of the trust estate and which should have been in his possession as trustee. He was being urged by the surety to make good this shortage. For the purpose of doing so, he placed the bonds in question in a safe deposit box, taken and agreed on by himself and the surety as a separate place of deposit for the securities belonging to this trust. In the box were placed also those securities belonging to the trust funds which had not gone out of his possession. All the securities thus placed in the box and held as constituting the trust funds have since remained there. The bankrupt has been removed as trustee, and the respondent, his successor in the trust, has

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

at present the possession and control of the box, including. the bonds in question.

"The bankrupt had at the time more than 25 other trust estates in his charge as trustee. There was, in the case of each, a shortage for which he was responsible and he knew the fact to be so. The total amount of these shortages exceeded $350,000.

"It has not been shown that any of the bonds used as above to make good the shortage in the Parsons trust estate, or that any of the money wherewith the bankrupt purchased those bonds, can be identified as belonging to any one of the other trust estates in the bankrupt's charge. He drew out and used to purchase certain of the bonds a savings bank deposit of $1500 belonging to one of the Parsons trust funds; but with that exception the money wherewith the bonds were bought as well as the bonds themselves must, for the purposes of the questions to be decided, be regarded as the bankrupt's individual property at the time he set them apart in the manner stated, to be thereafter held as trust property."

The provisions of the statutes in bankruptcy in regard to preferences, so far as they relate to this case, are found in Act July 1, 1898, c. 541, § 3, par. a, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as follows:

"Transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors."

In section 57g, referring to proofs of claims, "the claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences," as amended by the act of February 5, 1903 (Act Feb. 5, 1903, c. 487, 32 Stat. 799 [U. S. Comp. St. Supp. 1909, p. 1314]), in details not important here.

In section 60a, as amended by the act of February 5, 1903:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"b. If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

All the forms of transactions which are denounced by the statutes as preferences are found in the case at bar, and also the substance thereof; unless only that there are here no creditor and debtor as known to the common law, and nothing indeed except a tortious application by Shaw of the assets of the Parsons trust. The entire transaction, which consisted in the misappropriation by Shaw of securities in his hands as testamentary trustee, and returning the same, takes on in its general aspect none of the phases of the relations which grow out of giving credit and incurring debt, especially in the manner of merchants, which is the usual subject-matter of statutes in bankruptcy. We repeat that, so far as the mere forms to which we have referred are concerned, the transaction was within four months of the filing of the petition in bankruptcy; and the intent on the one side to prefer, and the reasonable cause on the other side to sufficiently charge the

creditor with knowledge of an intent to prefer, are found here. Therefore we must search beneath the surface in order to determine rightly the issues of this litigation.

It is not necessary that we should discuss the proposition as to intent and knowledge, because it is absolutely apparent that the views expressed by the learned judge of the District Court are correct, to the effect that for this purpose the intent entertained by Shaw was in his individual capacity, while the reasonable cause to assume the intent on the part of the preferred creditor appertained to Shaw as testamentary trustee in that capacity. Shaw was not a mere "dry" trustee, but is presumed as testamentary trustee to be the only person who can represent the estate in his hands; and his knowledge necessarily affects the entire trust with which he is charged, and stands for the knowledge, perhaps, of persons not yet in existence. There is no other way in which the conditions of knowledge, and the results which flow out of notice received or given, can be operative where a testamentary trust is in question. Therefore we address ourselves only to the peculiar features which we have named, postponing all question as to how far section 60b in referring to persons to be benefited by preference has application hereto.

Before proceeding further, we will give the provisions of the statutes defining claims provable in bankruptcy, because it seems to be an accepted doctrine that preferences are within the same subject-matter as claims provable, and it is only with reference to claims provable that preferences can be declared. Richardson v. Shaw, 209 U. S. 365, 381, 28 Sup. Ct. 512, 52 L. Ed. 835. Section 1 of the act of July 1, 1898, being the section with reference to definitions, enacts in paragraph 9 that "'creditor' shall include anyone who owns any demand or claim provable in bankruptcy," and in paragraph 11 that "'debt' shall include any debt, demand or claim provable in bankruptcy." Section 63 of the same statute reads as follows:

"Sec. 63a. Debts of the bankrupt which may be proved and allowed against his estate which are (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest; (2) due as costs taxable against an involuntary bankrupt who was at the time of the filing of the petition against him plaintiff in a cause of action which would pass to the trustee and which the trustee declines to prosecute after notice; (3) founded upon a claim for taxable costs incurred in good faith by a creditor before the filing of the petition in an action to recover a provable debt; (4) founded upon an open account, or upon a contract express or implied; and (5) founded upon provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interests accrued after the filing of the petition and up to the time of the entry of such judgments. (b) Unliquidated claims against the bankrupt may, pursuant to application to the court, be liquidated in such manner as it shall direct, and may thereafter be proved and allowed against his estate."

A claim based on a tort as known at common law is undoubtedly provable whenever it may be resolved into an implied contract. For example, it is a settled rule that where a tort-feasor by conversion of

personal property has sold the property converted, and received cash therefor, the true owner may sue him for money had and received as on an implied contract. This, of course, is a mere fiction of law; but, like all other such fictions, it is effectual when it will accomplish the ends of justice. So that, in that case, the owner of the property may proceed for a tort, or, at his option, on an implied contract, which would entitle him to make proof under section 63. An illustration appears in Tindle v. Birkett, 205 U. S. 183, 186, 27 Sup. Ct. 493, 51 L. Ed. 762. On the other hand, a mere tort, for example, a trespass involving a mere destruction of property, does not lay the foundation for a proceeding under that section. The force of Crawford v. Burke, 195 U. S. 176, 25 Sup. Ct. 9, 49 L. Ed. 147, is not correctly understood by the appellee here. This is made plain by what is said in Dunbar v. Dunbar, 190 U. S. 340, 350, 23 Sup. Ct. 757, 47 L. Ed. 1084, in the opening paragraph; so that the result of it all is that claims for mere torts, like personal injuries and injuries to real property, are not provable, as was determined by the Circuit Court of Appeals for the Third Circuit in Brown & Adams v. United Button Co., 149 Fed. 48, 79 C. C. A. 70, 8 L. R. A. (N. S.) 961 (1906), and by the Circuit Court of Appeals for the Second Circuit in In re New York Tunnel Co., 159 Fed. 688, 86 C. C. A. 556 (1908). A clear historical account of all these decisions will be found in Mr. Woodman's excellent work on Trustees in Bankruptcy, pp. 690, 691, 692. The question whether Shaw's default with reference to the assets of his trust is to be classified with mere torts will be considered later.

Neither, as we have said, is there any difficulty arising from the fact that, in these transactions, Shaw as an individual was dealing with himself as trustee. We have several times observed on the fact that the administration of bankruptcy proceeds on equitable principles. At the common law the husband and wife are held as one; but yet we showed in an elaborate discussion in James v. Gray, 131 Fed. 401, 65 C. C. A. 385, 1 L. R. A. (N. S.) 321 (1904), that a wife may under equitable rules prove against her husband's estate in bankruptcy. It must be at once conceded that we cannot proceed here on principles other than those which would govern us in the event Shaw had resigned his trust, and Clarke had been appointed his successor therein, before the loss to the trust had been made good. In other words, it follows beyond all question that we cannot find that what occurred here was not a preference in the event we should be compelled to find that the same transactions were a preference when passing between Shaw as an individual and his successor in the trust. However, as to this duality, the equitable rules are so clear that we do not find it necessary to cite further authorities, or adduce other propositions in regard thereto, than we have already cited and adduced.

While the definitions of "creditor" and "debt" do not assume to be exclusive, but only inclusive, nevertheless it is undoubtedly the general construction of the statutes in bankruptcy that nothing is within their purview so far as preferences are concerned, except with reference to debts which can be proved for a dividend. On the other hand, it must be accepted that anything which can be proved for a dividend is within the purview of those portions of the statutes which relate to

preferences, whether or not they are strictly shadowed out by the words "creditor" and "debt," as especially defined in the statute or as otherwise reasonably understood. We must admit this, notwithstanding we said at the outset that the transactions before us here were not on their face within the usual contemplation of statutes in bankruptcy. Moreover, it will be a great hardship if the various estates of which Shaw was trustee cannot recover any part of their loss of about $350,-000 by sharing in his bankrupt estate. This may, of course, in this instance, be but a very small dividend, but in another instance it might be very near the face of the default. Any construction which would leave such a result as that cannot, of course, be accepted unless fairly forced upon us.

The cases we have referred to show that in section 63b the words, "unliquidated claims" do not enlarge what precedes in section 63a, so that we must ascertain whether what is involved here comes within that portion of that section: (1) Relates to fixed liabilities; (2) to costs; (3) also to costs; (4) to open account or contracts express or implied; and (5) to judgments. None of these are available here unless it is "contracts express or implied."

The position of Shaw as testamentary trustee, until he was guilty of some breach of trust, involved no contract known to the common law. It can be said not to involve any contract whatever, because there is no person with whom he contracts; otherwise, perhaps, with a trust inter vivos. Aside from that distinction, the relation of a trustee, unless there is some express agreement on the face of the deed of trust, involves no contract. Pollock, in his Principles of Contract (7th Ed.) at pages 208 and 209, struggles with an attempt otherwise, but without success. He treats this under the head of a general discussion with reference to the rights of persons as to contracts between other parties. There is no occasion for such a discussion with reference to the rights of third persons under a proper trust, as a proper trust relates not to a matter of contract, but to a matter of conscience according to the development of the equitable law in reference thereto. The well-known proposition which Mr. Pollock restates that, by the creation of a trust, duties are imposed on, and undertaken by, the trustee which persons not even in existence at the time of the creation of the trust may afterwards enforce, puts it beyond doubt that there is no contract involved. He concludes by reiterating the proposition that, although every trust may be said to include a contract, it includes so much more, and trusts are so distinct, that the complex relations involved in them cannot be reduced to the ordinary elements of contract. The impossibility of likening the relation of a trustee, properly so speaking, to a contractor, is well illustrated in the Girard Will Case, 2 How. 127, 196, 11 L. Ed. 205, where it is pointed out that a valid trust may exist, although the common-law court cannot enforce it, and although there were no courts of equity existing at the time in the state of Pennsylvania, to which the opinion related, subject to such remedies as might afterwards be afforded by the Legislature. However, this topic is cleared up thoroughly by Hill on Trustees (4th Am. Ed.) 1, where the well-known fact is positively reiterated that, as against trustees of the class of

testamentary trustees, the only remedy is by the writ of subpoena issuing from the court of chancery.

At bar, however, we have a trustee guilty of a default. In Massachusetts he had violated a penal law, and was liable to imprisonment. Rev. Laws 1902, c. 208, § 48. He was, of course, under obligation to restore the assets which he had embezzled, or the value thereof, to the trust. It appears by the citations of the statutes of Massachusetts that this obligation would ordinarily be enforced by a removal from his office by the action of the probate court, followed by the appointment of his successor in the trust, further followed by an order to make good to the new trustee whatever deficiency there was. In the present case, it appears, that Shaw gave the usual probate bond, with a surety or sureties, and that the ultimate remedy would be by a suit on that bond. Therefore, in this particular case, there was an express contract obligation; that is, the bond. It is true that, in the ordinary course, enforcing the bond would be at the end of the proceedings, and not at the beginning. Nevertheless, as the equitable rules which govern in bankruptcy always look to the end, and disregard the intervening details as only steps to reach the end, there was in this case a contract from the beginning—that is, the bond—which was capable of liquidation on the rules explained in Tindle v. Birkett, 205 U. S. 183, 27 Sup. Ct. 493, 51 L. Ed. 762, already referred to. Aside from this, and independently of the bond, we believe there is an obligation resting on a defaulting testamentary trustee to restore the value of the assets embezzled, which is of a contractual character. The method of recovering upon this would be so far purely incidental that the Legislature might at any time provide for an action at common law in behalf of the successor as trustee, whatever might at any time be the preceding remedies either by a suit in equity, or by a suit on the bond, or by a summary order of the court having jurisdiction in reference thereto.

With reference to the authorities on this topic, no decisions of the federal courts have been brought to our attention which are in any way binding on us. McNaboe v. Columbian Mfg. Co., 153 Fed. 967, 83 C. C. A. 81, a decision by the Circuit Court of Appeals for the Second Circuit (1907), went off on the single proposition that the party charged with receiving the preference had no knowledge whatever of the facts in reference thereto. It related to stolen money which had been restored. It was held that a preference had not been established; although, of course, as money was involved, the just owner of it had a right to an action for money had and received on an implied contract. Tindle v. Birkett, 205 U. S. 183, 27 Sup. Ct. 493, 51 L. Ed. 762, already referred to, only reiterated what we have already said in reference to the right on behalf of an injured party, in some cases of tort, to waive the tort and take his place with the creditors of the estate. The implication, of course, is that, without the waiving of the tort, the claim could not be proved, justifying positions which we have already taken, but not involving the crucial matter which we are now discussing.

The English decisions are not very satisfactory from any point of view. The principal difficulty in applying them with us is that

from the condition of the law as shown in Robson's Bankruptcy (2d Ed. 1872), 126, and sequence, continuing to the present time, a preference may not be invalid, provided it does not involve a leading purpose to give an advantage to the creditor. In other words, when the main purpose was to save the debtor through quieting the creditor by giving him a preference, the act may not be unlawful. Perhaps it cannot be said that this was at all times the only ground on which the line of English cases to which we refer rested, yet it was apparently the turning proposition in Sharp v. Jackson (1899) A. C. 419. This, of course, must be regarded as the leading and authoritative English decision. The holding there was that the trustee, who had been guilty of a breach of trust, and was insolvent, did not accomplish an unlawful preference where his purpose was to shield himself from the consequences of his default, although his preferential act was without any pressure or special request. William's Bankruptcy Practice (9th Ed. 1908) takes up this topic at page 272, without any positive proposition in the author's own behalf. The author cites the line of cases with a statement that it seems that a defaulting trustee and his cestui que trust, or cotrustee, do not stand in the relation of debtor and creditor. That is the principal proposition urged on us in this case. He proceeds that this doctrine has been disapproved by Lord Halsbury in Sharp v. Jackson, at page 426. Lord Halsbury said that misappropriation may involve something more, but that it does create the relation of debtor and creditor he could have no doubt. Sharp v. Jackson is found under another title, decided by the Court of Appeal in 1897, 2 Q. B. 19, and is put on the same ground as stated in the House of Lords. In the latest case in England on this topic, In re Lake (1901) 1 Q. B. 710, this dictum of Lord Halsbury was questioned, and the case put squarely on the same propositions as governed Sharp v. Jackson, although at page 718 Lord Justice Stirling quotes from Lord Esher in a way which comes to the proposition that a man should be allowed to repent and repair his former evil deeds, although the result would defeat the purposes of the bankruptcy statutes. The first pronouncement in this direction we find is in Ex parte Stubbins, 17 Ch. D. 58, decided by the Court of Appeal in 1880. This seems to be based on the objection with which we started at the outset, that there is nothing in the transactions here which is within the general purposes of statutes in bankruptcy. The next case was decided by the Court of Appeal in 1886, Ex parte Taylor, 18 Q. B. D. 295. Apparently that case rested on substantially the same grounds as Ex parte Stubbins; that is, that there is present no relation of debtor and creditor. In fact, it expressly followed Ex parte Stubbins. But, as we have said, we must adopt Sharp v. Jackson as the final view of the English courts, based, as we have also said, on the proposition that the primary purpose of the transfers was to save the debtor, rather than to aid the creditor. We do not understand that the federal courts have gone so far as to justify the application by us of so broad a rule. It may be that, under some circumstances of immediate intimidation, with threats to follow them by immediate action, we might be justified in holding that no elements of a voluntary preference are present, although we doubt that. So far as this case is con-

cerned, we cannot go beyond what we decided in Hardy v. Gray (1906) 144 Fed. 922, 925, 75 C. C. A. 562, where we applied Grant v. Bank, 97 U. S. 80, 24 L. Ed. 971, the effect of which is to justify a transfer where the ruling motive is a belief that, if the immediate creditor was quieted, the debtor might go on with his affairs, ultimately recuperate his business and discharge all his debts.

On the whole, we find nothing either in the federal or the English decisions which we think would justify us in reversing the conclusions reached by the learned judge of the District Court.

In this case it appears that the surety on Shaw's bond as testamentary trustee under the Parsons will was aware of Shaw's general financial condition and of his defalcation, and urged the restoration of the trust. We have not deemed it necessary to consider whether, under the circumstances, this surety was benefited in such a way that a suit under the statutes in bankruptcy would lie against him as one benefited by a preference, even if the present proceedings were not maintainable. We prefer to put the case on the broader grounds which we have expounded.

The decree of the District Court is affirmed, and the appellee recovers his costs of appeal.