REYNOLDS v. NEW YORK TRUST CO.

(Circuit Court of Appeals, First Circuit. June 22, 1911.)

No. 918.

1. ACTION (§ 28*)—WAIVER OF CONVERSION—ACTION ON QUASI CONTRACT.
    Where a plaintiff's goods have been converted, his right to waive the tort and sue in contract for their value is the same, whether defendant has sold the goods or has kept, concealed, or consumed them.
    [Ed. Note.—For other cases, see Action, Cent. Dig. §§ 196–215; Dec. Dig. § 28.*]

2. COURTS (§ 361*)—BANKRUPTCY—CONSTITUTIONAL GRANT OF POWER—CONSTRUCTION OF ACTS—EFFECT OF STATE DECISIONS.
    In the exercise of jurisdiction in bankruptcy, conferred under the Constitution, the courts of the United States have the right to resort to the principles of the common law, and therefrom to determine whether an obligation of a contract nature arises upon a conversion of goods and is available to the owner upon waiver of his right to pursue his remedy in tort, and are not controlled by the decisions of the state courts.
    [Ed. Note.—For other cases, see Courts, Dec. Dig. § 361.*]

3. BANKRUPTCY (§ 318*)—PROVABLE DEBTS—QUASI CONTRACTS—WAIVER OF TORT.
    Bankruptcy courts may give to Bankruptcy Act July 1, 1898, c. 541, § 63a (4), 30 Stat. 562 (U. S. Comp. St. 1901, p. 3447), which allows proof of debts founded upon "a contract express or implied," a construction sufficiently broad to include quasi contracts arising upon a conversion where the tort has been waived.
    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 318.*]

4. TORTS (§ 22*)—JOINT AND SEVERAL LIABILITY—ELECTION BY PLAINTIFF.
    The liability of one of several tort-feasors is not both joint and several, but is joint or several at the election of the plaintiff, and, if he has recovered a joint judgment, he is not entitled also to a several judgment against one of the same persons.
    [Ed. Note.—For other cases, see Torts, Cent. Dig. §§ 29, 31; Dec. Dig. § 22.*]

5. BANKRUPTCY (§ 309*)—PROVABLE DEBTS—PARTNER—CONVERSION BY PARTNERSHIP.
    The rule, which permits the owner of property converted to waive the tort and recover the value of the property as on an implied contract, is based on the ground that defendant's estate has been unjustly enriched by the conversion, and where it was by a partnership, and inured to the benefit of the firm estate, whatever implied contract arises is that of the firm, and not of an individual partner, and the owner of the property, after having proved his claim against the partnership estate as one of contract, is not entitled to prove it against the individual estate of a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

partner, which would have the effect of giving them an advantage over creditors having express contracts with the firm.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 309.*]

Appeal from the District Court of the United States for the District of Massachusetts.

In the matter of E. H. Gay, bankrupt. Appeal by John P. Reynolds, trustee, from an order allowing the claim of the New York Trust Company. Reversed.

Albert S. Woodman (Tyler & Young, Woodman & Whitehouse, Charles H. Tyler, Owen D. Young, John P. Wright, and Robert T. Whitehouse, on the brief), for appellant.

Charles P. Howland (Charles W. Whittlesey and Howland, Murray & Prentice, on the brief), for appellee.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. This is an appeal by the trustee in bankruptcy of E. H. Gay, from an order of the District Court for the District of Massachusetts, allowing a claim of the New York Trust Company for the sum of $14,875 against the individual estate of E. H. Gay. A claim of like amount was allowed against the copartnership estate of E. H. Gay & Co., bankrupt. From the allowance of the claim against the copartnership estate there is no appeal.

The question before us is whether the Trust Company has the right to make double proof and to have its claim allowed both against the copartnership estate and against the individual estate of one of the copartners.

By stipulation the parties have agreed upon the following facts:

(1) E. H. Gay was the managing partner of E. H. Gay & Co. The New York Trust Company, owner of 25 $500 first-mortgage 6 per cent. bonds of the Manistee, Filer City & East Lake Street Railway Company, lodged them with E. H. Gay & Co. on March 14, 1905, together with $3,125 in cash, under a deposit agreement by which E. H. Gay & Co. were to deliver to the New York Trust Company at par value $15,625 bonds of a corporation to be organized in the course of the reorganization of the Railway Company.

(2) In pursuance of this agreement the Manistee Light & Traction Company was incorporated. Its bonds were issued and delivered to E. H. Gay & Co., who received and held 15 $625/950 of them for the New York Trust Company under the deposit agreement. These 15 $625/950 bonds were pledged by E. H. Gay & Co., without authority from or knowledge of the New York Trust Company, as security for loans negotiated in the course of the firm business of E. H. Gay & Co. for their own benefit. No notice was ever sent to the New York Trust Company that the Manistee Light & Traction Company bonds had been received by E. H. Gay & Co. for the benefit of the New York Trust Company, and the Trust Company had no knowledge that E. H. Gay & Co. had the bonds.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(3) No attempt is made by the New York Trust Company to show that the unauthorized pledge of the bonds was the individual act of E. H. Gay.

(4) It is hereby stipulated by parties that the market value of bonds of the Manistee Light & Traction Company at the time of conversion herein was $950 for each bond of $1,000 face value, and, if said claim of the petitioner is allowed as a claim against the individual estate of E. H. Gay, it is agreed that such allowance may be in the sum of $14,-875.

The claim filed against the copartnership estate made no allegation of a conversion either by the copartnership or by E. H. Gay, but alleged merely the receipt by E. H. Gay & Co. of bonds, for delivery to the Trust Company, and the nondelivery to the Trust Company.

The learned District Judge was of the opinion that the claim allowed against the firm estate was neither presented nor allowed as a claim based on a liability in tort, and that as against the firm no liability in tort had been waived in order to rest the claim on an implied promise arising upon the waiver of tort; but that failure to comply with the firm's express promise was the sole basis of proof against the firm.

The claim against the individual estate of E. H. Gay is based solely upon the theory of an implied contract or quasi contract, arising from the conversion of the bonds by E. H. Gay & Co. in the course of the firm business.

By its terms the claim against E. H. Gay individually alleged a conversion of the bonds by E. H. Gay. This allegation, however, becomes immaterial since the stipulation provides that no attempt is made to show that the unauthorized pledge was the individual act of E. H. Gay; and since it does not appear that E. H. Gay individually received benefit therefrom.

The Trust Company contends that the conversion was in course of the firm business, and that thereby the partners became jointly and severally liable in tort for the conversion; that upon the waiver of tort there arise implied contracts or quasi contracts both of the firm and of the individual partners to pay the value of the bonds converted to the use of the firm.

Where there are separate and distinct express contracts of the firm and of a copartner to pay a debt contracted by the firm, the right to prove against both estates may be conceded. If one dealing with a firm procures also the individual undertaking of a partner to answer for the firm debt, there are substantial reasons for permitting him to resort to both estates. In re McCoy, 150 Fed. 106, 80 C. C. A. 60; Chapman v. Bowen, 207 U. S. 89, 28 Sup. Ct. 32, 52 L. Ed. 116.

The additional several contract of a partner is not implied from the firm transaction, but must be created by a distinct act of the copartner.

As the conversion in the present case was by the firm, in the course of firm business; as the actual participation of E. H. Gay is not proved; as there is no evidence that his individual estate benefited by the firm conversion—there is difficulty in finding any substantial ground upon which to imply from the circumstances a separate contract of E. H. Gay. which corresponds to an express individual contract to answer for a firm debt.

While the partnership relation exposes one partner to liability for firm debts contracted by another partner without his consent, one partner has no authority to make an individual contract for another partner.

In the present case it is contended that because under the partnership relation partners, through firm dealings, may be made jointly and severally liable in tort, there arise quasi ex contractu on waiver of tort, not only a joint contract; but also several contracts of each partner to pay the amount of the firm debt. This contention seems also to involve the proposition that upon a conversion of bonds or stock by a partnership there arise a number of debts; as many individual debts as there are partners, and also a firm debt.

The breach of an express contract to deliver the bonds to the Trust Company creates only a partnership debt, for payment of which resort must be had to the proceeds of the partnership property. Bankruptcy Act July 1, 1898, c. 541, § 5f, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3424).

Upon a suit for such a breach of contract only a single judgment could be had, a judgment against the firm, upon which resort would be had to the firm assets.

The claim against E. H. Gay is based entirely upon the fact, stated in the stipulation though not in the claim, that the copartnership converted the bonds.

Viewing both estates, we have asserted against E. H. Gay, as a joint debtor, either a breach of express contract or an implied contract to pay for value received; as an individual debtor, the conversion of the bonds, a tort, with a waiver of the remedy in tort.

We now reach the important question whether the fact that there was a conversion by the firm is in itself a sufficient basis for an implied or quasi contract of E. H. Gay individually.

As was said in the opinion of this court in Clarke v. Rogers, 183 Fed. 518, 106 C. C. A. 64:

"A claim based on a tort as known at common law is undoubtedly provable whenever it may be resolved into an implied contract. For example, it is a settled rule that where a tort-feasor by conversion of personal property has sold the property converted, and received cash therefor, the true owner may sue him for money had and received as on an implied contract."

The trustee, appellant, claims that it is a well-established law that:

"Unless there has been a sale of the property and a receipt of the proceeds of the same in money, the tort cannot be waived, and an action or claim will not lie as for money had and received, upon an implied promise or quasi contract"—citing Jones v. Hoar, 5 Pick. (Mass.) 285; Ladd v. Rogers, 11 Allen (Mass.) 209; Allen v. Ford, 19 Pick. (Mass.) 217; Berkshire Glass Co. v. Wolcott, 2 Allen (Mass.) 227, 79 Am. Dec. 781.; Brown v. Holbrook, 4 Gray (Mass.) 102; Hagar v. Norton, 188 Mass. 50, 73 N. E. 1073; Newmarket Mfg. Co. v. Coon, 150 Mass. 566, 23 N. E. 380; Cooper v. Cooper, 147 Mass. 373, 17 N. E. 892, 9 Am. St. Rep. 721.

While some of these cases might be distinguished on the ground that they relate merely to the scope of the special action for money had and received, yet it must be conceded that upon the whole they may be regarded as giving a somewhat narrow limitation to the doctrine of quasi contract. We should be reluctant, however, to rule

that the claim should be disallowed on so limited a view of the scope of the law of quasi contracts.

It is difficult to find any substantial ground upon which the judicial conscience which admits the use of fiction to sustain an action of assumpsit for money had and received should refuse to adopt a similar fiction upon an action in assumpsit for goods sold and delivered. Where a person has converted personal property to his own use by keeping, concealing, or consuming it, there is every reason for requiring him to pay its value and for giving the owner an option to sue upon contract. To hold him upon an implied contract if he has sold the goods for money and used the proceeds, but to refuse to hold him upon an implied contract for the value of goods consumed but not sold, is to limit the doctrine of quasi contracts by an arbitrary distinction which disregards the substantial similarity of the two cases.

[1] If the plaintiff's goods are taken, his right to waive the tort and to sue in contract should be the same whether the defendant has sold the goods or has consumed them.

While the authorities in America are divided (Keener on Quasi Contracts, 193 et seq.), there seems little doubt of the soundness of Mr. Keener's conclusion that:

"The two cases involve a common element which is universally recognized in the one case, and should be in the other, as furnishing a ground for recovery, namely, that the defendant has had that for which in conscience he should give the plaintiff an equivalent in money." Keener on Quasi Contracts, 195.

In Crawford v. Burke, 195 U. S. 176–194, 25 Sup. Ct. 9, 13 (49 L. Ed. 147), where the defendants sold stocks and thereby converted them to their own use, the court said:

"It is evident that the plaintiff might have sued them in an action on contract charging them with the money advanced and with the value of the stock."

The trustee contends that upon the question whether there arises, from a mere conversion without a sale, an implied contract or a quasi contract to pay the value of the goods converted, we should be governed by the Massachusetts decisions, citing Fleitas v. Richardson, 147 U. S. 550, 13 Sup. Ct. 495, 37 L. Ed. 276; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; In re Chandler Cloak & Suit Co. (C. C.) 151 Fed. 952; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577.

These cases, however, are too restricted in scope to support the trustee's contention.

[2] In the exercise of the jurisdiction in bankruptcy conferred under the Constitution, the courts of the United States have the right to resort to the principles of the common law, and therefrom to determine whether or not an obligation of a contractual character arises upon the conversion of goods and is available to the owner upon waiver of his right to pursue his remedy for tort. See the learned opinion of Shiras, J., in Murray v. Chicago & N. W. Ry. Co. (C. C.) 62 Fed. 24, cited with approval in Western Union Tel. Co. v. Call Pub. Co., 181 U. S. 92–103, 21 Sup. Ct. 561, 45 L. Ed. 765.

The decisions of a state court, so far as they relate to the scope of particular forms of action and as to the adoption or nonadoption of particular modes of procedure involving the use of ancient fictions, can hardly be regarded as conclusive upon the broader question of the existence of an obligation of a contractual character.

In Clarke v. Rogers (C. C. A.) 183 Fed. 518–524, Judge Putnam clearly recognizes the distinction between the question of the existence of a contractual obligation and the question of the mode of recovery in the following language:

"Independently of the bond, we believe there is an obligation resting on a defaulting testamentary trustee to restore the value of the assets embezzled, which is of a contractual character. The method of recovering on this would be so far purely incidental that the Legislature might at any time provide for an action at common law in behalf of the successor as trustee, whatever might at any time be the preceding remedies either by a suit in equity, or by a suit on the bond, or by a summary order of the court having jurisdiction in reference thereto."

[3] As the bankruptcy statute suspends the special remedies under state laws and substitutes its own procedure, it is important that the meaning of section 63, which defines debts which may be proved, should not be narrowed nor confused by reading into it local decisions denying a right of recovery under particular modes of procedure. Uniformity of construction is desirable, and we think the courts of bankruptcy are at liberty to give to the words "upon a contract express or implied," in section 63a4, a breadth of meaning which will include quasi contracts, in which the real ground of liability is that for value received in money or in goods a defendant should pay.

Assuming, therefore, that by the conversion there was created a contractual obligation, we have next to inquire what is its nature.

[4] It is argued that as tort-feasors are jointly and severally liable, so the implied contract is both joint and several. The proposition that joint tort-feasors are "jointly and severally liable" requires careful consideration, however, since there is ground for thinking that the fundamental error in the Trust Company's argument arises from the inaccuracy of this expression.

The liability of one of the several tort-feasors is not both joint and several, but is joint or several at the election of the plaintiff. The plaintiff may have judgment against one or more, but he may not have two judgments against the same person on the same transaction.

If a tort is committed by several, it may be treated as joint or several at the election of the aggrieved party. Gould on Pleading, c. 4, § 66; Sessions v. Johnson, 95 U. S. 348, 24 L. Ed. 596; Atlantic & Pacific R. v. Laird, 164 U. S. 393, 17 Sup. Ct. 120, 41 L. Ed. 485; Chicago, Burlington & Quincy Ry. v. Willard, 220 U. S. 413, 31 Sup. Ct. 460, 55 L. Ed. —— (April 10, 1911).

A joint judgment is a bar to a several action, and a several judgment to a joint action.

At law, therefore, one whose goods were converted by partners could not have both a joint and several judgment, but could have either at his election. The present claims, therefore, if reduced to

judgment in tort, would not be two, but one judgment only, joint or several, at the plaintiff's election.

It seems impossible that the Trust Company should have greater rights before judgment than if it had proceeded to judgment.

In Bigby v. U. S., 188 U. S. 400–409, 23 Sup. Ct. 468, 472 (47 L. Ed. 519), it was said:

"A party may in some cases waive a tort, that is, he may forbear to sue in tort and sue in contract, where the matter out of which his claim arises has in it the elements both of contract and tort. But it has been well said that 'a right of action in contract cannot be created by waiving a tort, and the duty to pay damages for a tort does not imply a promise to pay them upon which assumpsit can be maintained.'"

The individual tort imputed to E. H. Gay being waived, what elements remain to support an individual contract? That a partnership of which he is a member has had the bonds.

In Keener on Quasi Contracts it is said (page 160):

"Assuming a defendant to be a tort-feasor, in order that the doctrine of waiver of tort may apply, the defendant must have unjustly enriched himself thereby," etc.

If the right to recover on quasi contract upon a waiver of tort rests upon the doctrine of unjust enrichment, the difference between enrichment by money and by stocks or bonds, of known market value, would be unsubstantial. To limit the right to recover on quasi contract to cases where money had been received would be arbitrary and hardly defensible in reason.

As there is no individual act of E. H. Gay, or benefit to his estate which is separable from the act and benefit of the firm, what is there except the fact that the creditor once had a right to sue him individually as a tort-feasor to support the theory of an individual promise or an individual quasi contract?

The Trust Company contends that both the claim against the firm and the claim against the individual were proved on the theory of implied contract based on the conversion of the bonds, and that the proof against the firm was not on an express contract. Chicago & N. W. Ry. Co. v. De Clow, 124 Fed. 142–148, 61 C. C. A. 34, is cited, to sustain the proposition that there has been no election to proceed for breach of express contract, and thereby to waive any action on implied contract.

[5] Assuming for the purposes of the case, however, that the Trust Company bases both claims upon the contractual obligations arising upon a waiver of the joint tort, we do not escape the fundamental difficulty in the case. If there is an implied contract of the firm, of E. H. Gay jointly with the other partners, growing out of the fact that the firm pledged the bonds as security for loans negotiated in the course of the firm business, and for the firm benefit, can it be said with consistency that E. H. Gay is also liable because he individually had the bonds or their proceeds?

It is apparent that in the decision of this case we can derive no assistance from those cases in which it appeared that a partner, or one of several joint tort-feasors, had individually converted property or

funds and wrongfully appropriated them to the uses of a firm. The opinion of the District Court correctly distinguishes between cases of that character and the present case. In such cases the individual, as well as the firm, has had the property—the individual by using it as his contribution to the firm, and the firm by using it in the firm business. Both were under an obligation because both had received a benefit. Here are two distinct causes of action.

It is apparent that the present claim was allowed solely upon the authority of decisions in the Second Circuit. In re Coe (D. C.) 169 Fed. 1002; In re Coe (C. C. A.) 183 Fed. 745. In the opinion of the District Court (169 Fed. 1002) it was said that the members of a firm were jointly and severally liable upon a claim either in tort or upon quasi contract, at the creditors' election, for misappropriation, and that upon their bankruptcy the plaintiff could file double proof both against the partnership assets and against the individual assets of each partner, citing In re Baxter, Fed. Cas. No. 1,119; In re Jordan (D. C.) 2 Fed. 319; In re Blackford, 35 App. Div. 330, 54 N. Y. Supp. 972; Lindley on Partnership (5th Ed.) 703; Loveland on Bankruptcy, 315, and cases cited: In re Parkers, 19 Q. B. Div. 84.

In the Circuit Court of Appeals (183 Fed. 745) it was said:

"It makes no difference that the parties acted without evil intent, nor that the firm got the benefit of what they did. It remains a wrongful conversion for which all the partners are liable, not jointly as partners, but jointly and severally as tort-feasors, whether they each actively participated in it or not; the acts of every one being imputed to every other."

The only additional authority cited by the Circuit Court of Appeals was Blyth v. Fladgate, L. R. Ch. Div. (1891) 337.

With the greatest respect for the opinions of the learned judges in both the District Court and the Circuit Court of Appeals, we are unable to accept the proposition that joint tort-feasors are jointly and severally liable, if by that is meant subject to both joint and several judgments. As we have said, a plaintiff is not entitled to two judgments against a tort-feasor, but is put to his election. He is permitted to deal with each of the tort-feasors as if he were the sole cause of the tort; but he may not subject a single defendant to two judgments, joint and several.

Had this creditor proceeded to reduce its tort claim to judgment before bankruptcy, and to prove on the judgment in tort under section 63a (1), he could have had but one judgment against E. H. Gay; at the creditors' election an individual judgment, or a judgment against E. H. Gay with others. In other words, he would have been compelled to elect between a joint and a several liability.

It is true that upon the joint judgment in tort he might have had execution against the individual estate, but this is equally true of a joint judgment on contract.

The bankruptcy statute intervenes to destroy the ordinary rights under execution, by section 5g, which divides the assets into partnership estate and individual estate, and gives priority of rights in the assets to creditors according to whether the debts are partnership or individual.

The brief of the Trust Company states, correctly we think, that "this is a question concerning the nature of legal rights." The creditor's legal right was to make his claim joint or several; he could not make it both, and must elect. The creditor's rights were in the alternative and not cumulative; he is forced to an election; not according to the early English rule that an election must be made even where there are distinct contract rights against both the firm and the individual, but on the ground that at law his right is to have his cause of action joint or several, but not both.

If it be granted for the purposes of the case that upon a waiver of tort there arise contractual obligations which correspond to the tort obligations, then it follows not that there are two contracts, one joint and one several, but one contract which is joint, or in the alternative a number of contracts which are several. But, as we have seen, the proposition that upon a waiver of tort there arise contractual obligations corresponding to liabilities in tort is itself most doubtful.

If on principle the doctrine of quasi contracts is broader in scope than the action for money had and received, and should be extended to all cases in which a defendant has had that for which in conscience he should give the plaintiff an equivalent in money (Keener, 195), yet in the present case this reason applies only to the firm, and not to the individual who was not an actual participant, nor beneficiary.

Under such conditions the rule that forbids contribution between wrongdoers abates, and the right arises to recover from the actual wrongdoer the damage imposed upon one who is not in fact a participant; the ultimate responsibility being cast upon the acutal wrongdoers. Union Stock Yards Co. v. Chicago & N. W. Ry. Co., 196 U. S. 217, 224, et seq., 25 Sup. Ct. 226, 49 L. Ed. 453.

Whether in any event the right to contribution would not cast this claim ultimately upon the partnership estate, under chapter 3, § 5g, through a claim of the individual estate, is a query which we need not solve, but simply refer to as a possible complication that might result from implying a contract against one who is held liable as a tortfeasor without actual participation or moral responsibility.

Furthermore, the fiction of a promise should not be extended beyond its legitimate purpose, and especially should it not be permitted to affect injuriously the rights of third persons.

There is an inconsistency between the requirement that a plaintiff should waive the tort and take his place with the other creditors, and a contention that by virtue of the tort alone he should have implied contracts which put him in a better position than other creditors who have express contracts.

The bankruptcy act requires a distinction between firm and individual debts. The test of whether the debt is firm or individual is the character of the transaction from which it arises. Here there was no transaction other than a firm transaction; and a fiction of law which raises a promise based solely upon tort liability and not upon an obligation to pay for value received by an individual, cannot be allowed without an infringement of the rights of the individual creditors, and of bankruptcy rules of equality.

Upon a review of the cases cited we find no sufficient authority for the allowance of double proof in a case like the present. Without questioning the correctness of the decisions in the cases in the Second circuit, or considering the differences in facts, we nevertheless do not feel constrained to accept the proposition that upon a waiver of tort there arise contractual obligations corresponding to tort obligations, or the further proposition that upon waiver of a joint tort there arise both joint and several obligations ex contractu. The contractual obligation arises only when value has been received for which in good conscience a defendant should pay.

We are of the opinion that the claim against the individual estate of E. H. Gay should be disallowed on the ground that upon this record only a firm contract exists after the waiver of tort.

The judgment of the District Court is reversed, and the case remanded to that court with direction to disallow the claim of the New York Trust Company for the sum of $14,875 against the individual estate of E. H. Gay, and the appellant recovers costs in this court.