In re BIEHL.

(District Court, E. D. Pennsylvania. December 11, 1916.)

No. 5594.

1. BANKRUPTCY ⊙⟶309—PROVABLE CLAIMS—PARTNERSHIP AND INDIVIDUAL ESTATES.

One having a claim against a bankrupt firm, evidenced by notes, and also a claim against one of the partners individually for breach of contract, the damages being measured by the same debt, may prove his claim against the firm estate, and, after crediting the dividend thereon, may prove the balance due as a claim against the estate of the partner.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 555–564; Dec. Dig. ⊙⟶309.]

2. BANKRUPTCY ⊙⟶228—FINDINGS OF REFEREE—REVIEW.

Findings of fact made by a referee will not be disturbed by a reviewing court, except upon a strong showing that they are erroneous.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387; Dec. Dig. ⊙⟶228.]

In Bankruptcy. In the matter of B. Frank Biehl, bankrupt. On petition for review of order of referee. Affirmed.

W. K. Stevens, of Reading, Pa., for trustee.
Thomas I. Snyder, of Reading, Pa., for claimant.

DICKINSON, District Judge. [1] The legal principle upon which the referee based his ruling is embraced in this proposition: Where a creditor has a claim of debt against a firm, evidenced by an absolute obligation in writing for its payment, and also an optional claim in tort for misappropriation of money or property (the damages in which are measured by the same debt), and also has a claim against an individual upon a separate and independent contract of bailment (damages flowing from the breach of which are measured by the same debt), he may prove his claim of debt against the bankrupt estate of the firm, and (after allowing credit for the dividend received) prove a claim for the balance due him against the bankrupt estate of the individual, notwithstanding the fact that the individual is a member of the firm and liable as a partner for the firm debt.

As the soundness of this legal principle is not denied, the appellate question involved resolves itself into an inquiry into the facts, and we might well rest a dismissal of the petition for a review upon the well-recognized rule of noninterference with findings of facts, leaving their vindication to the able and well-considered opinion of the referee. The ability and earnestness, however, with which the argument in support of the petition has been pressed, merits a consideration of certain features of the case, and a review of the adjudged cases which would otherwise be unwarranted.

The evidentiary facts upon which the referee based his findings are not in dispute, although perhaps open to different characterizations. There are three parties involved. They are the Maxwell Motor Sales Corporation, B. & C. Motor Car Co. (a partnership), and B. Frank Biehl. The latter was a member of the B. & C. firm.

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The partnership and Biehl has each been adjudged a bankrupt and each has assets insufficient to pay the debts in full. The Maxwell Company was permitted to prove its claim (representing the same debt) in each proceeding. Its right to do this is the sole question involved in the present inquiry. It proved its claim against the bankrupt estate of the firm and was allowed a dividend. The question suggested is raised by objections to a subsequent proof of the balance of its claim against the bankrupt estate of Biehl.

The claim arises out of the following state of facts and transactions: The Maxwell Company manufactured automobiles. The B. & C. firm sold automobiles as a dealer. Biehl was in the iron business, and was also a member of the above firm, and its financial backer. The Maxwell Company shipped to the firm cars of different types, to be delivered, upon payment of sight drafts accompanying bills of lading. The original arrangement was that, upon shipment of cars consigned by the Maxwell Company to themselves, the bills of lading, with the sight drafts, were forwarded to a bank at the place of consignment. The firm was to take up the drafts, receive the bills of lading, and through them get the cars. This arrangement was departed from, presumably because it was not always convenient for the firm to take up the drafts. What was then done was this: The bank was instructed to deliver the bills of lading upon receiving part cash, the note of the firm for the balance, with the automobiles pledged as collateral, and the agreement of Biehl to take and hold possession of the cars for the Maxwell Company as pledgee, and not to deliver them to the firm until and except as the notes were paid. A separate note was given and separate pledge was made of each car, which was fully described. The agreement between the company and Biehl contained a recital of the fiction (substantially true in fact) that the company had loaned to the firm the amount involved (being the unpaid part of the price of the car), and that for this loan the firm had given its collateral note, pledging the car as security, and as an inducement to this arrangement Biehl had undertaken to retain possession of the car so pledged, and not deliver it until and unless the note was paid, and set forth the further undertaking of Biehl to so hold the cars and to transmit the moneys to the company if and when the notes were paid.

The claim against Biehl (aside from his partnership liability on the note) arises out of the fact that he parted with the pledge without receiving payment of the note, and loss resulted to the company to a sum measured by the sum due on the note. Some question would appear to have existed of whether Biehl ever received payment of any of the notes, but the allowance of a claim against the firm for the aggregate of all the notes is a finding that none of them were paid. There was also in the transaction the feature or fiction of a retention of title in the Maxwell Company until payment through the usual device of a formal bailment. If the transaction is viewed with Biehl disassociated from the firm, the rights of the company will more clearly appear. Its entire claim was restricted to the amount of the notes. It possessed the clear right to demand from

the makers of the notes payment thereof. If this demand was not met, and nothing was recovered from the makers, it was as clearly entitled to sell the pledge and receive payment from the proceeds of such sale. If the pledge was lost through the culpable act of the agent, he would be answerable for the value of the pledge up to the sum due on the note, which latter sum measured the damage of the pledgee.

The referee has found such loss and allowed the claim of the pledgee for the balance due them as the consequent damages against the estate of Biehl. There was no suggestion at the argument of any excessive allowance in amount to the pledgees, and because of this we have not inquired into the correctness of the amount allowed. The learned referee bases his conclusion upon the findings that the firm had a title to the automobiles which they could pledge, that they had pledged them for their debt, that Biehl as an individual received and agreed to hold for the Maxwell Company the cars until the notes were paid, and that he culpably failed so to do to pledgee's hurt in that a part of the debt for which the pledge was given was thereby lost.

The views of the referee may be thus presented: Stated negatively, the claimant was not seeking to recover one judgment against Biehl through a claim against the firm of which Biehl was a member (all the members of which were joint tort-feasors), and to recover another judgment against Biehl individually for the same tort through the simple device of pursuing the firm ex contractu on an implied assumpsit and pursuing Biehl individually, thereby securing two judgments against Biehl for the same cause of action. Stated affirmatively, the claimant was presenting a claim against the firm on a liability wholly ex contractu, based upon an express promise, and another altogether distinct, separate, and different claim against Biehl individually, based upon what he, as an individual, had undertaken and failed to do. The facts were clearly within the province of the referee to find, and the correctness of the findings made are well· vindicated in the opinion returned. The specific conclusion reached, that when two persons are severally and independently, each individually, liable for a debt, the creditor may look to either or each for payment, is supported both by reason and abundant authority, and we do not understand to be questioned. Bowen v. Chapman, 150 Fed. 106, 80 C. C. A. 60, affirmed in 207 U. S. 89, 28 Sup. Ct. 32, 52 L. Ed. 116.

The case of Reynolds v. N. Y. Trust Co., 188 Fed. 611, 110 C. C. A. 409, 39 L. R. A. (N. S.) 391, 26 Am. Bankr. Rep. 698, is in no sense in conflict with this conclusion. All that was there held was that recovery might be had for a firm tort either against the firm or against an individual member of the firm, but there could not be two recoveries, and that, although the plaintiff might waive the tort and sue on the implied assumpsit, the principle still held good that he could not recover on the obligation of the firm against an individual partner, both as a member of the firm and as an individual. The District Court in the Coe Case, 169 Fed. 1002, 22 Am. Bankr.

Rep. 384, ruled that where a firm was liable on a draft and had misappropriated moneys representing the same debt, the party injured could prove a claim against the bankrupt estate of the partnership, and (after allowing a credit for the dividend received) could prove a claim for the balance against the bankrupt estate of an individual partner. This ruling was affirmed on appeal. In re Coe, 183 Fed. 745, 106 C. C. A. 181, 26 Am. Bankr. Rep. 352.

The real ground of the ruling made might be overlooked upon a cursory reading, and perhaps is not disclosed by the case as reported. The referee had rejected the claim. We do not know on what ground. The fact does appear, however, that there had been a composition of the firm debts. It also appeared that an indebtedness of the firm arose out of its acceptances on drafts. The opinion of the judge of the District Court informs us that the trustee claimed the composition to have extinguished the obligation. The opinion delivering the judgment of the Circuit Court of Appeals states that the ruling of the referee was so based. We do not know whether the individual debts of the partner exhausted his individual assets. All, therefore, which was ruled by the Coe Case, as reported, is that where a firm is indebted on a draft, and has also misappropriated funds or property of the same creditor, the party defrauded may prove a claim against the estate in bankruptcy of an individual partner, notwithstanding that the indebtedness, evidenced by the draft, is for the same moneys which were misappropriated, and notwithstanding the further fact that the firm had made a composition with its creditors. It it be the fact that there was a surplus of individual assets over individual debts, then all the case rules is that the composition of the firm debts did not extinguish the claim against the individual partner for the wrongful conversion of moneys by the firm. It is to be noted that the opinion was expressed that the doctrine of election, as applied to the right of the injured party to waive the tort and sue in assumpsit on the implied contract, was not involved in the ruling.

The language quoted and discussed in Reynolds v. Trust Co. may have been used to express the thought that the liability of the individual members of a firm is the liability of joint tort-feasors, and not the liability of partners, and that the existence of the partnership merely imputes the tort to each member of the firm, so that the action may be against all or some, and that, if against all, each is responsible in solido. It seems to us this is the thought expressed, and that it is not said, nor meant to be said, that the party injured may secure a judgment against the partners as a firm, and then secure another and separate individual judgment against any one individual partner. The latter is the doctrine repudiated in the Reynolds Case.

Whatever defenses to this claim might be suggested by an analysis of the situation presented, the ability of counsel and thoroughness of the argument presented on behalf of the petitioner justify us in restricting our attention to the grounds of defense set forth. The paper books submitted in this case afford an illustration of the

truth that it is often more difficult to determine what is the question involved in a case than to answer the question when stated. The learned counsel for petitioner differs with the referee, not upon the soundness of the principle of law upon which the ruling was based, but upon what principle the case should be ruled. The argument on behalf of the trustee is, when analyzed, found to be based upon a proposition of fact, and is therefore addressed to its support.

A feature, and indeed a leading one, is insistence upon the fact that the transaction was the shipment of automobiles by the claimant to the firm, which, if paid for on delivery, became a sale pure and simple, and security for which, if not paid for, was attempted to be secured through the ancient device of retaining title by means of a fictitious bailment. The claimant had therefore a claim against the firm and against the partners only as members of the firm, whether it chose to treat its claim as based upon a debt or a tort.

The secondary agreement, by which Biehl as an individual was interposed, as the claimant's custodian of the automobiles, between the real vendor and real vendee, or, if you please, the real bailor and real bailee, was a mere myth and a nullity, and existed only on paper, and was never acted upon in fact. If the transaction is treated as a sale, it was a sale by the claimant to the firm. If it is treated as a bailment, it was a bailment by the claimant to the firm. More than that, even if the secondary agreement be regarded as a real thing, and Biehl as the agent of the claimant, all liability and responsibility was confined to two things—for the moneys paid to him, or the automobiles delivered to him as such agent, and in point of fact he never received either money or cars.

This first stated fact is admitted, and the second is argued to be shown by the other fact, that the claimant ignored Biehl as an individual and as an agent, and dealt directly and wholly with the firm. In the averments of fact thus made is summed up the whole argument upon this phase for the petitioner, because the most which can, in the face of such a state of facts, be said for the secondary agreement is that by it Biehl agreed to act as agent for the claimant in and under a bailment contract with the firm, but never in fact so acted.

[2] Unfortunately for the petitioner, the fact has been found against him by the referee. It may be that the evidence would have justified a different finding. There has nothing, however, been brought to our notice which takes this case out of the general rule applicable to findings by triers of fact. The rule, among its other sanctions, has that of being a rule of policy. Courts vested with appellate powers will not lightly exercise them in disturbance of fact findings, because to do so is merely to substitute one trial court for another, and to multiply the time, trouble, and expense involved in litigation. The rule voices a wise policy, because it casts upon the trial court full responsibility, and encourages more careful decisions than would obtain if the case was to be retried before another and higher court. The law of a case must be reviewed, because the law should be uniform, and legal principles are of general application. Without appellate supervision, the law would vary in every subordinate jurisdiction. Fact findings

affect only the particular case tried, and justice to one is a right which must yield to a general policy from which flows public good. Fact findings are most likely to be just when the trial tribunal assumes full responsibility.

Under the facts as found, the legal principles applied by the referee properly apply, and they are admittedly sound. Under those facts the principle advanced by the petitioner has no application. In reality, all that the referee has ruled is that the maker of a note may be held liable to the holder for the amount thereof, and that the bailee for safe custody of property may be held responsible to the bailor for the value thereof, if lost, and that actions may be brought against each, notwithstanding the fact that the property lost by the bailee may have been pledged for the payment of the note, and in this sense the respective claims are the same. The question of double satisfaction is not raised.

The objection to the claim as not one provable in bankruptcy, based upon the statement that it is unliquidated, we do not think well taken. The claim is within the express language of the act defining claims which are provable, because it is based upon the written contract of the bankrupt. The Rubel Case (D. C.) 166 Fed. 131, is clearly not in point. We content ourselves with the mere statement of the conclusion reached, without entering into a discussion of the question, because its adequate consideration would add to the length of an opinion already unduly long.

The findings of the referee are approved, the order made affirmed, and the petition for review dismissed.