### LORD v. SEYMOUR et al.

(Supreme Court, Appellate Division, Second Department.   June 12, 1903.)

1. LARCENY—RIGHT TO AVAILS.
      Whether the legal title to money obtained by one under circumstances constituting larceny passed to him or remained in the persons furnishing it, it belonged to his creditors, unless it passed into the hands of a bona fide owner for value.
2. SAME—ESTOPPEL.
      The creditors of one obtaining money under circumstances constituting larceny, which is loaned by his agent to a firm, are not estopped from claiming their share of the assets of the firm by the fact that members of the firm falsely represented to its customers that such amount was money which a special partner had contributed to the firm.

Appeal from Special Term, Kings County.

Action by John B. Lord, as trustee in bankruptcy of William F. Miller and the Franklin Syndicate, against Henry A. Seymour and others. From a judgment for plaintiff, defendants appeal. Affirmed.

The following are the findings of fact of the court below:

#### Findings of Fact.

(1) During a few months prior to November 23, 1899, the defendant Miller, in the name of the Franklin Syndicate, obtained by larceny from a number of people large amounts of money. He invested part of this money on November 23, 1899, in a certificate of deposit issued by the Wells, Fargo Bank for $100,000 and in $40,000 United States government bonds. (2) On November 23, 1899, said Miller, who was then about to abscond to avoid his creditors and escape arrest, transferred this certificate of deposit and the bonds to the defendant Robert A. Ammon, and Ammon had the bonds transferred by the Wells, Fargo Bank from his own name to that of his wife, Winifred F. Ammon. (3) These transfers were without consideration, and were nominal, and the property so transferred was held by the said Robert A. Ammon and Winifred F. Ammon as the agents and representatives of said Miller, and for his benefit and subject to his direction. Mrs. Ammon knew nothing of this transaction. (4) On November 28, 1899, bankruptcy proceedings were duly instituted against the said Miller and the said Franklin Syndicate in the District Court of the United States for the Eastern District of New York, and they were, on January 24, 1900, each adjudicated involuntary bankrupts therein, and on April 24, 1900, the plaintiff was duly appointed trustee of their estates, and duly qualified, and ever since has been, and now is, said trustee. (5) In December, 1899, and for some time prior thereto, the defendants Henry A. Seymour and Frederick W. Johnson were doing business in the city of New York with J. M. Fortier and T. H. Robinson under the name of Seymour, Johnson & Co., which business they continued until the alleged formation of Seymour, Johnson & Co., as hereinafter stated, except that Fortier and Robinson withdrew in December. (6) On January 2, 1900, Robert A. Ammon drew a check in favor of said Seymour, Johnson & Co. against the $100,000, the proceeds of said certificate of deposit, standing on the books of said bank to the credit of said Robert A. Ammon, and delivered said check to Seymour, Johnson & Co. At the same time Seymour, Johnson & Co. gave a check to Winifred F. Ammon for $60,000. Said firm gave to Robert A. Ammon their note for $40,000, payable in one year, with interest. The receipt of the $100,000 and the payment of the $60,000 was covered up in the books of the firm by being charged to the individual account of the defendant Seymour. (7) The check for $100,000 was indorsed by Seymour, Johnson & Co. to David Webster, and was deposited by him to his credit, and he drew his check for $100,000 against the same, back to the firm. (8) On January 2, 1900, Seymour, Johnson, and Webster filed a certificate that they had formed a special partnership, to which Webster, as special partner, had contributed $100,000. In

fact, Webster had made no such contribution. (9) The new firm took the assets of the old firm, including its bank balance of $40,058.37, assumed its liabilities, and continued its business. (10) On January 22, 1900, Winifred F. Ammon, out of the $60,000 received by her as above mentioned, gave the firm a check for $50,000, which was credited by it to the said special account of Seymour. On December 18, 1899, Robert A. Ammon had loaned to the former firm of Seymour, Johnson & Co. $10,000 of Miller's money, upon the agreement that he should be paid the current rate of interest for it. On January 19, 1900, the new firm gave to Robert A. Ammon for the $50,000 and the $10,000 loaned to the old firm in December its note for $60,000. (11) On February 3, 1900, Robert A. Ammon, acting on behalf of Miller, delivered the said $40,000 United States bonds to Seymour, Johnson & Co., who credited them to Seymour's special account. On March 23, 1900, the same were sold for $43,975, of which $3,975 was paid back by the firm to Robert A. Ammon. For the difference of $40,000 the firm gave to Robert A. Ammon its note dated January 19, 1900, secured by the pledge of the seat of the defendant Johnson in the stock exchange. (12) On February 6, 1900, the firm drew its check for $100,000, charged it against the special account of the defendant Seymour, and delivered it to Webster, who simultaneously gave his check to the firm for the same amount, so that no money actually passed. (13) On February 8, 1900, a certificate was filed and notice published by Seymour, Johnson, and Webster that the defendant Webster had contributed $100,000 as additional special capital to the firm. In fact, no such contribution was made. (14) There was no understanding between Seymour, Johnson, and Ammon that the latter should be paid a portion of the profits of the firm. (15) Seymour, Johnson & Co. advertised that Webster had contributed $200,000 special capital to their firm, and their customers gave them credit upon the faith of such statement. (16) Seymour, Johnson & Co. knew that this money was not Ammon's but Miller's, and the receipt and payment was purposely concealed in their books to prevent Miller's creditors, and the plaintiff as his trustee in bankruptcy, from tracing and recovering it. (17) The three notes of Seymour, Johnson & Co. above mentioned of $60,000, $40,000, and $40,000 are in the possession of Robert A. Ammon, who holds the same as the attorney for the defendant Miller. (18) On May 28, 1900, Seymour, Johnson & Co. and Seymour and Johnson individually made an assignment to the defendant Alfred Hayes, Jr., of all their property for the benefit of their creditors. He took possession of the same, and in November, 1900, instituted a proceeding in accounting, as such assignee, in which a reference was ordered, and the referee thereon made a report in June, 1901, directing a distribution of the funds in the hands of the said assignee. (19) By reason of the fraudulent concealment by Miller, Robert A. Ammon, Winifred F. Ammon, and the defendants Seymour and Johnson of the receipt by them of the said moneys and bonds, the plaintiff did not learn of the same and of this accounting until after the referee had made his report. He immediately gave notice to the defendants of the plaintiff's claim, and brought this suit, in which a preliminary injunction has been issued, restraining the paying out by said assignee of the funds in his hands. No decree had been made in said accounting confirming the referee's report up to the time of the trial, but such decree has since been made. Neither in said report nor in said decree is any mention made of the plaintiff as a creditor of said firm. (20) The moneys and bonds belonging to Miller, which were delivered to Seymour, Johnson & Co., as hereinabove stated, were mixed with their assets, so that their identity has been lost.

The following is the opinion of the trial court:

I find that the money and bonds which defendant Robert A. Ammon placed in the hands of Seymour, Johnson & Co. had been obtained by defendant Miller from various persons under circumstances which the Court of Appeals has decided constituted larceny; that the money was given by Miller to Ammon as his agent to hold for Miller's benefit. I decide that it is immaterial whether the legal title to the money passed to Miller or remained in the persons who placed it in his hands. It belongs to his creditors, unless it came into the hands of a bona fide owner for value. I find that Robert A. Ammon was not a partner of Seymour, Johnson & Co.; that the money contributed

by him was not contributed as a partner, but was a loan, for which the firm gave to Ammon their notes; and that the arrangements by which Ammon received a part of the profits of the firm was made that Ammon might receive a bonus for his personal benefit. The creditors of Miller are not estopped from claiming their share of the assets of the firm of Seymour, Johnson & Co., because of representations made by the firm to its customers that contributions had been made to the capital of the firm by a special partner, because no such contributions were made. This statement was false. The plaintiff can maintain this action because the relief sought could not otherwise be obtained.

The plaintiff is entitled to judgment for the relief demanded in the complaint, with costs.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Coudert Bros., for appellant Hayes.
John P. Murray, for appellant Johnson.
Wingate & Cullen, for respondent Lord.
Robert A. Ammon, for respondents Seymour and Miller.
Charles N. Morgan & Sons, for respondent Webster.
Peter C. De Wolff, for respondents Ammon.

PER CURIAM. No opinion. Judgment affirmed, with costs, on the opinion of Mr. Justice WILMOT M. SMITH at Special Term. Leave to appeal to the Court of Appeals will be granted on application.