## LYNCH et al. v. LENTZ.

(District Court, S. D. California, S. D. December 17, 1925.)

No. 2100–J.

**1. Bankruptcy ⊜140(½)—Property to which bankrupt has no ownership right does not become part of bankrupt estate.**

Property to which bankrupt possesses no ownership right, though in his possession, does not become part of bankrupt estate.

**2. Bankruptcy ⊜140(1)—Water heaters in possession of sales company held not to become part of bankrupt estate.**

Water heaters on premises of sales company, under agreement that they were to be sold only when formally released by manufacturer's agent and paid for by sales company, on bankruptcy of sales company, *held* not to become part of bankrupt estate.

**3. Bankruptcy ⊜474—Costs of unsuccessful action by trustee to recover property proper charge against bankrupt estate.**

Costs assessed in unsuccessful action by trustee in bankruptcy to recover possession of property alleged to belong to bankrupt constitute a proper charge on bankrupt estate.

At Law. Action by E. A. Lynch, trustee in bankruptcy of the estate of E. J. Clement and others, doing business under the firm name and style of the Everhot Heater Sales Company, against M. B. Lentz. Judgment for defendant.

C. H. Scharnikow, of Los Angeles, Cal., for plaintiff.

O'Melveny, Millikin, Tuller & Macniel, of Los Angeles, Cal., for defendant.

JAMES, District Judge. This proceeding is brought on behalf of the plaintiff, trustee in bankruptcy of the property of a copartnership known as Everhot Heater Sales Company, to recover possession of a certain lot of water heaters which, on the day the bankruptcy petition was filed and the adjudication made, were on the premises of the bankrupt. The defendant, by claim and delivery action in the state court, caused possession of the heaters to be taken by the sheriff. In that behalf he represented the manufacturer of the heaters, and the question here to be determined is as to whether complete or qualified ownership in the water heaters had passed to the bankrupt firm, or whether, as claimed by the defendant, the transaction was

one where the bankrupt partnership had rights of a bailee only.

[1] It must be conceded under the law that property found in the hands of a bankrupt, as to which the latter possesses no ownership right of any quality whatsoever, does not become part of the bankrupt estate. At the time the evidence was taken in this matter I indicated that my preliminary conclusion would be that, at least as between the manufacturer of the water heaters and the bankrupt partnership, title to the heaters had not passed. I left open the question for argument as to whether, under the situation disclosed by the evidence, the manufacturer had in any wise so acted as to estop it from claiming title and possession as against the creditors of the bankrupt estate. Quite extensive briefs were filed and have been thoroughly examined.

[2] I feel convinced that not only was it the intention of the manufacturer of the water heaters that it should retain full ownership and the right to control possession of the heaters, but that it never relinquished this right, or through any voluntary act created an apparent condition which would justify any other person in relying upon a different assumption. The facts were that the bankrupt firm had been the handlers, for marketing purposes in the Los Angeles market, of the water heaters manufactured by the defendant's principal. The bankrupt did a wholesale business—supplied the trade principally. Early in September, 1924, the bankrupt firm owed the manufacturer in excess of $6,000 for heaters delivered and which had been sold by the bankrupt. The manufacturer was disinclined to allow any further credit without securing liquidation of the existing indebtedness. It was disinclined to sell on credit more heaters to the bankrupt. The managing member of the bankrupt firm visited the factory office at Detroit in September, 1924, and endeavored to come to some agreement under which heaters would be furnished him. On September 2, 1924, a letter had been written to the bankrupt's manager wherein the manufacturer company stated:

"Providing we can make satisfactory arrangements with a local warehousing company in Los Angeles, we will ship a carload of heaters to the warehouse and release them to you in whatever quantities you desire them, upon payment to the warehouse company for the heaters plus the freight. This arrangement will make it unnecessary for you to carry large stocks, and what working capital you have can be used to finance your operations. It should also enable you to remit to us at least $1,000 monthly, in addition to paying for heaters purchased from the local stock. If this proposal is favorable, we suggest that you get in touch with some reputable bonded warehouses in Los Angeles and have them write to us, giving us detailed information bearing on their charges for this service and their responsibility."

On September 9th the bankrupt's manager wired to the manufacturer that the warehouse arrangement suggested was agreeable, and mentioned a certain warehouse in Los Angeles from which deliveries could be taken. On September 15th, after it was found that a $600 charge would be made by the warehouse company per annum for the storage of the heaters, which was deemed excessive, the manufacturer wired to the bankrupt firm to investigate other similar available service and report. Thereafter, and in lieu of the outside warehousing plan being carried out, it was agreed that the lot of heaters, from which the needs of the bankrupt firm were to be supplied, should be stored on the premises of the bankrupt, and that the manufacturer's representative designated to act in Los Angeles, when sales of heaters had been made by the bankrupt firm, should call upon the bankrupt and formally release to it heaters in lots of ten, and make collection on account of the sale forthwith. The lot of heaters was stored under this arrangement, and it may be said that they were fairly kept separate from other stock belonging to the bankrupt.

However, without permission of the manufacturer or its agent, the bankrupt did at one time take heaters out of the lot without making payment therefor in the manner agreed, and the manufacturer, upon learning of this, made vigorous complaint in writing. The bankrupt firm, by its manager, professed its willingness to redeliver the actual possession of the heaters to the manufacturer, and a situation was reached where the manufacturer proposed to have its agent retake the heaters. Upon the same day that the agent, this defendant, did so act to repossess the heaters, the voluntary petition in bankruptcy was filed. Upon a survey of the whole evidence, I think the necessary conclusion here to be made is that the heaters sought to be reclaimed by the trustee never constituted a part of the bankrupt's property.

[3] Judgment will be in favor of the defendant, together with costs, which will constitute a proper charge, to be paid in due course out of the distribution of the bankrupt's property.