## MORRIS PLAN INDUSTRIAL BANK OF NEW YORK v. SCHORN.

### No. 203.

Circuit Court of Appeals, Second Circuit.
April 23, 1943.

Henry W. Parker, of New York City, for appellant.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This case concerns the adequacy of the fifth specification of objection to discharge of a bankrupt, filed by an objecting creditor, and reading as follows: "That the bankrupt has failed at her first meeting of creditors herein, although requested to do so, satisfactorily to explain loss of assets or her deficiency of assets to meet her liabilities; such deficiency amounting to over $35,000 and the assets not accounted for being the moneys of the Simmons Company appropriated by the bankrupt." The bankrupt filed formal exceptions, stating only that she excepted to the specifications filed; and these the referee sustained as to the .third and fifth specifications, and overruled as to the four other specifications filed by the creditor. On petition for review, which brought up only the specification quoted, the district court affirmed, and the creditor has appealed here.

Appellant in its brief states various facts not in the record which it hopes to prove at trial; but since this is purely a question of pleading, we should confine ourselves to the case as it was presented to the referee and the district court. On the other hand, we should not construe the pleading more strictly against the pleader than they did,

particularly as the referee's order dismissed the specifications "without leave to amend." The referee wrote no memorandum, but in his certificate of review he says: "The specification alleges a failure on the part of the bankrupt to explain satisfactorily loss of assets in the sum of $35,000. being the monies appropriated by the bankrupt from the Simmons Company. The assets not accounted for are the property of the Simmons Company and therefore not recoverable by the trustee as an asset of this estate for the benefit of bankrupt's creditors. * * *[1] Bankrupt cannot be denied her discharge because she kept no books setting forth the details of her defalcations from her employer who alone could recover any money if found in possession of bankrupt, or for failure to account for such monies."

The district court wrote a memorandum in which it said as to the $35,000: "This so-called asset was money which had been stolen by the bankrupt from her employer. The money in question did not belong to the bankrupt, and even if such money was still in the possession or under the control of the bankrupt, title to it would not have passed to the Trustee in Bankruptcy, nor could it be used to pay the bankrupt's debts. Accordingly, it was not incumbent upon the bankrupt to account for this money, and the failure to do so is not a sufficient reason for denying a discharge."[2]

There is, therefore, substantial agreement as to the meaning of the specification, namely, that the bankrupt had stolen, or otherwise appropriated or converted from her employer, the Simmons Company, the sum of over $35,000, and that this sum was lost and she had not explained its loss satisfactorily. Nothing appears to show whether or not the Simmons Company has made a claim against the bankrupt estate.[3] Both the referee and the court agree that the bankrupt need not explain the loss of these funds, for the reason that the trustee in bankruptcy is not entitled to their posses-sion. We think that this premise is not correct.

Several cases hold directly that a bankrupt cannot refuse to turn over to his trustee assets of which he had assumed possession and dominion merely upon a showing that title to them is in a third person. In re Beal, D.C.Mass., 2 Fed.Cas. page 1107, No. 1,156; In re Moses, D.C. S.D.N.Y., 1 F. 845; Petition of Friedlaender, 1 Cir., 233 F. 250; Lord v. Seymour, 85 App.Div. 617, more fully reported in 83 N.Y.S. 88, affirmed 177 N.Y. 525, 69 N.E. 1126. In line with this is the decision in In re Schenderlein, D.C.Mass., 268 F. 1018 (supported in 34 Harv.L.Rev. 682), that transfer of a stolen automobile may be an act of bankruptcy. Also in line is the well settled rule that property converted, embezzled, or otherwise taken by the bankrupt, or obtained by him by fraud, can be claimed from the bankrupt estate only so long as it can be definitely traced, with the consequence that an attempted repayment by the bankrupt prior to bankruptcy is a preference, except where made from the very property taken, Walser v. International Union Bank, 2 Cir., 21 F.2d 294, 298; Clarke v. Rogers, 228 U.S. 534, 33 S.Ct. 587, 57 L.Ed. 953, affirming 1 Cir., 183 F. 518; 3 Collier on Bankruptcy, 14th Ed., 814–818; 4 Id. 1058; T.W.S., 32 Yale L.J. 267. The rule applies even to property which the bankrupt had held in trust. See 4 Collier on Bankruptcy, 14th Ed., 1141-9, 1207-15, with cases cited; City of New York v. Rassner, 2 Cir., 127 F.2d 703, 705. Then, too, the claimant himself may waive his rights to the specific property, and does so if he files a claim for its value without standing on such rights. Id.; Cunningham v. Brown, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873; Thomas v. Taggart, 209 U.S. 385, 392, 28 S.Ct. 519, 52 L.Ed. 845. There is nothing inconsistent with these rules in In re Clement D. Cates & Co., D.C.S.D.Fla., 283 F. 541, 546, allowing a preferred claim for the proceeds of property converted where, but only where, they could be specifically

---

[1] The referee here cited In re Wilde, D.C.S.D.N.Y., 48 F.Supp. 230, 50 A.B. R.,N.S., 252, where the district court refused to deny a discharge of a bankrupt for failure to keep books of gambling transactions; compare discussion of this case in Klein v. Morris Plan Industrial Bank, 2 Cir., 132 F.2d 809.

[2] Citing Thomas v. Taggart, 209 U.S. 385, 28 S.Ct. 519, 52 L.Ed. 845; Lynch v. Lentz, D.C.S.D.Cal., 10 F.2d 561; In re Clement D. Cates & Co., D.C.S.D. Fla., 283 F. 546, which are referred to hereinafter.

[3] One of the specifications left standing by the referee is to the effect that the bankrupt purposely and fraudulently omitted to schedule the Simmons Company as a creditor.

traced, or in Lynch v. Lentz, D.C.S.D.Cal., 10 F.2d 561, allowing the true owner, who had repossessed by state court action, to retain possession of his property.

These rules also accord with the more usual conclusion of the common law that to the claim of a possessor the assertion of title in a third party is not a good defense, Philbrick, Seisin and Possession as the Basis of Legal Title, 24 Iowa L.Rev. 268, 292–301; Bordwell, Property in Chattels (Property in the Trespasser), 29 Harv.L. Rev. 374; Wheeler v. Lawson, 103 N.Y. 40, 8 N.E. 360; Anderson v. Gouldberg, 51 Minn. 294, 53 N.W. 636; McKee v. Gratz, 260 U.S. 127, 136, 43 S.Ct. 16, 67 L.Ed. 167; Matthews v. Correa, 2 Cir., 135 F.2d 534; 34 Yale L.J. 72; 20 Col.L.Rev. 622; 23 Col.L.Rev. 652. There, too, actual delivery to the true owner was a defense, though the mere claim in his right was not. McKinnon v. Western Development Co., 2 Cir., 196 F. 487; 1 Restatement, Torts, § 249.[4]

◼ Hence, whether or not the Simmons Company would attempt to, or could, trace the specific funds and reclaim them from the bankrupt estate, we think the bankrupt herself could not make the claim on behalf of the Company, but would need to deliver her possession to her bankruptcy trustee. And from this it seems reasonable to conclude that if she has lost or dissipated the funds she can be called upon to explain. The specification is drawn under Bankruptcy Act, § 14, sub. c(7), 11 U.S.C.A. § 32, sub. c(7), providing as a ground for denial of discharge that the bankrupt "has failed to explain satisfactorily any losses of assets or deficiency of assets to meet his liabilities." Appellant deduces from the insertion of "his" before "liabilities," but not before "assets," that a wider inquiry is envisaged as to assets than as to liabilities. But we think resort to so logomachical an argument is not necessary, and that all we need do is to follow the common-law doctrine that possession and asserted dominion is good title "against all the world except the true owner" to reach the result that an explanation is here required, with appropriate penalty when it is not forthcoming. When any showing under the statute has been made, "the laboring oar" of explanation passes to the bankrupt and "he must bring the boat to shore." Federal Provision Co. v. Ershowsky, 2 Cir., 94 F.2d 574, 575. To say that all explanation is foregone in the case of a bankrupt who has assumed dominion over money to the extent of dissipating it would seem decidedly anomalous.

◼ Since the order appealed from left four specifications standing, it was an interlocutory ruling, but of the kind from which an appeal appears proper in bankruptcy. See In re Carley, 3 Cir., 117 F. 130; and Goodman v. Curtis, 5 Cir., 174 F. 644, allowing an appeal from refusal of leave to amend; also In re Haytian Corp., 2 Cir., 112 F.2d 146; Lane v. Haytian Corp., 2 Cir., 117 F.2d 216, certiorari denied 313 U.S. 580, 61 S.Ct. 1101, 85 L.Ed. 1537; In re Hotel Governor Clinton, 2 Cir., 107 F. 2d 398; 2 Collier on Bankruptcy, 14th Ed., 788–795.

The order appealed from is, therefore, reversed and the case is remanded for further proceedings not inconsistent with this opinion.

---

[4] Hessen v. Iowa Automobile Mut. Ins. Co., 195 Iowa 141, 190 N.W. 150, 30 A. L.R. 657, appears to rest partially upon the view that one may not have an insurable interest in a stolen automobile; it has been criticized in 32 Yale L.J. 497 and 8 Iowa L.Bull. 181, and seems opposed to Sky v. Keystone Mut. Casualty Co., 150 Pa.Super. 613, 29 A.2d. 230, where an insurer was held liable with respect to an accident, notwithstanding that the automobile might have been acquired criminally. The origin of property from possession is set forth in the famous passage in Anatole France's Penguin Island, c. 3, "Setting Bounds to the Fields and the Origin of Property": "'In yonder pleasant valley a dozen men penguins are busy knocking each other down with the spades and picks that they might employ better in tilling the ground. * * * Alas! Bulloch, my son, why are they murdering each other in this way?' 'From a spirit of fellowship, father, and through forethought for the future,' answered Bulloch. 'For man is essentially provident and sociable. Such is his character and it is impossible to imagine it apart from a certain appropriation of things. Those penguins whom you see are dividing the ground among themselves. * * * They are creating law; they are founding property; they are establishing the principles of civilization, the basis of society, and the foundations of the State.'" Cf. Motherwell, The Catastrophe of Peace, 12 Common Sense 111, 112, April, 1943: "For all practical purposes Europeans will on armistice day enjoy no property rights, but only possession rights."