In re Chaim Y. GANNON, Debtor.

Tzvi NOF, Plaintiff,

v.

Chaim Y. GANNON, Defendant.

Bankruptcy No. 92 B 45308 (JLG).
Adv. No. 92–1262A.

United States Bankruptcy Court,
S.D. New York.

Oct. 19, 1994.

Abraham J. Katz, Flushing, NY, for plaintiff.

Mitchell Craner, New York City, for debtor/defendant.

### MEMORANDUM DECISION ON OBJECTION TO DEBTOR'S DISCHARGE

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Tzvi Nof ("Nof") seeks judgment pursuant to §§ 727(a)(3), (a)(4)(A), (a)(4)(D) and (a)(5)

of the Bankruptcy Code ("Code") denying Chaim Gannon ("Gannon" or "debtor") his discharge in bankruptcy. Alternatively, he requests that his undisputed debt of $39,-987.50 be declared nondischargeable pursuant to §§ 523(a)(2)(B) and/or 523(a)(6) of the Code. After having considered the pleadings, the testimony and documentary evidence of record at trial and the parties pre and post-trial submissions, we grant judgment in favor of Nof denying Gannon's discharge.[1]

## Facts

Nof is a diamond dealer who has worked in the diamond district located at or around West 47th Street and Fifth Avenue in New York City for nearly twenty years. In the two year period prior to the Filing Date, Gannon worked as a salesman at various retail jewelry stores in the diamond district.

This litigation arises out of Gannon's quest to broker diamonds. It is not disputed that during the period of January through March 1991, Gannon took delivery of a total of four diamonds from Nof. Each time Gannon took possession of a diamond, he executed a printed form memorandum prepared by Nof. Each memorandum listed the size of the particular diamond and the price at which Nof would sell it. Each memorandum also contained the following language:

> The goods described and valued as below are delivered to you for examination and inspection only and remain our property subject to our order and shall be returned to us on demand. Such merchandise, until returned to us and actually received, are at your own risk from all hazards. No right or power is given to you to sell, pledge, hypothecate or otherwise dispose of this

merchandise regardless of prior transactions. A sale of this merchandise can only be effected and title will pass only if, as when we the said owner shall agree to such sale and a bill of sale rendered therefore.

Jt. Ex. 2, 4, 6.[2] The following summarizes the transactions between Nof and Gannon:

| Date of Delivery | Diamond Size | Price |
|---|---|---|
| 1/22/91 | 2.04 carats | $11,200 |
| 2/8/91 | 1.12 carats | $ 4,760 |
| 2/8/91 | 6.37 carats | $20,860 |
| 3/4/91 | 6.01 carats | $16,527 |

*Id.* Gannon returned the 1.12 carat diamond to Nof. He has paid Nof $8,625 on account of the 2.04 carat diamond. Gannon admits that he has neither paid for nor returned the 6.37 or the 6.01 carat diamonds and that he owes Nof a total of $39,987.50 on account of all the diamonds.

Gannon maintains that he sold each of the diamonds to a person he identified at trial as "David Schwartzkoff". *See, e.g.,* Trans. at pp. 185–97. Gannon claims that Schwartzkoff paid him the sum of $8,625 on account for the first diamond which he forwarded to Nof, but that Schwartzkoff disappeared after taking delivery of the third diamond and before making any payments on account of the second or third diamonds. *Id.* Nof concedes that he has received the sum of $8,625 on account of the 2.04 carat diamond.

In early 1992, Nof sued Gannon in New York City Civil Court, Queens County (the "Civil Court Litigation") seeking to recover the balance due on the 2.04 carat diamond and possession of the 6.37 and 6.01 carat diamonds. In that litigation Nof contends that the diamonds were entrusted to Gannon. He fixed his damages in the sum of $39,-987.50. Prosecution of that action was

1. This Memorandum Decision constitutes our findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable herein by Federal Rule of Bankruptcy Procedure 7052. Our subject matter jurisdiction of this adversary proceeding is predicated on 28 U.S.C. §§ 1334(b) and 157(a), and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

Nof and Gannon each testified at trial. In addition, Gannon offered the expert testimony of

Mr. Avi Nassani ("Nassani"). References to the transcript of the trial will be to "Trans.".

Despite the pendency of this adversary proceeding, an Order Discharging Debtor was erroneously signed on March 24, 1993 and entered of record. By Order dated April 1, 1993, that order was vacated.

2. "Jt. Ex." means the trial exhibits jointly designated by plaintiff and defendant. *See* Joint Pre-Trial Order, ¶ 13. The parties stipulated to the admissibility of the exhibits. *See* Trans. at p. 18.

stayed by the filing of Gannon's no asset chapter 7 case on September 23, 1992.

### Discussion

■ Under § 727 of the Code, an individual debtor is entitled to a discharge unless one of the ten enumerated exceptions to discharge specified in § 727(a) is established. The discharge extends to all pre-petition debts, except to the extent a particular debt is held non-dischargeable under § 523 of the Code. 11 U.S.C. §. 727(b). *See Karras v. Hansen (In re Karras)*, 165 B.R. 636, 638 (N.D.Ill.1994).

Nof's complaint consists of sixteen paragraphs and alleges seven causes of action. In their Joint Pre–Trial Order, the parties stipulated that the relief sought in the litigation was "[f]or a finding pursuant to section 523(a)(2)(B) that the discharge of [Gannon] does not release [Gannon] from [Nof's] debt. For a finding pursuant to Bankruptcy Rules 4004(d) and 7001(4) that [Gannon] failed to disclose his true financial status to the Court by omitting pertinent information." Joint Pre–Trial Order, ¶ 4. They framed the legal issue to be resolved as whether "the transactions ... between [Nof] and [Gannon were] of a nature so as to make them a nondischargeable debt under § 523(a)(2)(B) of the Bankruptcy Code." *Id.*, ¶ 8. In his Trial Memorandum, Nof fully revealed the theories upon which he sought relief. In addition to seeking judgment under § 523(a)(2)(B) of the Code, he sought to have his debt declared nondischargeable under § 523(a)(6) and to deny debtor his discharge pursuant to §§ 727(a)(3), (a)(4)(A), (a)(4)(D), and (a)(5).

Although the First Cause of Action identifies § 523(a)(2)(B) as the operative provision of the Code, the relief sought therein is the denial of Gannon's discharge, not a finding that Nof's debt is excepted from discharge. *See* Complaint at p. 6. Notwithstanding that relief is barred as a matter of law, we will construe the First Cause of Action as challenging the dischargeability of Nof's debt because the parties have done so. The remaining causes of action failed to specify particular Code sections. None sought the type of relief available under § 523(a)(6) of the Code. *See* Complaint, ¶¶ 1–16. None-theless, at the outset of the trial, the parties stipulated that the issues for trial were whether Nof's debt was nondischargeable under §§ 523(a)(2)(B) and/or 523(a)(6), and whether Gannon should be denied his discharge pursuant to §§ 727(a)(3), (a)(4)(A) and (a)(4)(D). *See* Trans. at p. 6.

Notwithstanding that stipulation and without obtaining leave of the Court, Nof has argued in his post-trial Supplemental Memorandum of Law and Proposed Findings of Fact and Conclusions of Law that in addition to the reasons stated at the outset of the trial, Gannon's discharge should be denied pursuant to § 727(a)(5) of the Code. Although Gannon's Post–Trial Proposed Findings of Fact and Conclusions of Law fail to reference specific Code sections, it is clear that three of his proposed Conclusions of Law pertain to § 727(a)(5). *See* Post–Trial Findings of Fact and Conclusions of Law, *Conclusions of Law* at ¶¶ 4–6. In any event, Gannon did not object to Nof's assertion of § 727(a)(5) as a bar to his discharge. Accordingly, in addition to the matters which were the subject of stipulation at trial, we will adjudicate the merits of Nof's contention that debtor's discharge be denied pursuant to § 727(a)(5) of the Code.

■ Objections to discharge are strictly construed against the objecting party and liberally in favor of debtor to promote the bankruptcy goal of "fresh start" for the honest debtor. *See Bank of Pennsylvania v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir.1976); *Continental Illinois Nat'l Bank and Trust Co. of Chicago v. Bernard (In re Bernard)*, 99 B.R. 563, 569 (Bankr. S.D.N.Y.1989). Although in *Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 660–61, 112 L.Ed.2d 755 (1991), the Supreme Court held that the party opposing the discharge of a particular debt under § 523(a) must establish the exception by a preponderance of the evidence, that court has not spoken on the appropriate burden of proof under § 727(a). In *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 285 (Bankr.S.D.N.Y.1992), *aff'd* 152 B.R. 830 (S.D.N.Y.1993), *reh'g denied* 1994 WL 191967 (S.D.N.Y.1994), Chief Judge Lifland held that the appropriate burden of proof under § 727(a) is the preponderance of

the evidence. In reaching that conclusion he did a complete analysis of the statute, its legislative history and relevant case law. In particular, he reviewed the court's rationale in *Grogan v. Garner* and how it bears on a determination of the appropriate burden of proof under § 727(a)(4)(A). *See Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. at 282–85. We agree with Judge Lifland's conclusion that the preponderance of the evidence is the burden of proof which should be applied to § 727(a) objections to discharge. *Accord First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156, 1157 (10th Cir. 1991); *Island Bank of Collier Co. v. Gill (In re Gill)*, 159 B.R. 348, 351–52 (Bankr. M.D.Fla.1993); *United States v. Sumpter (In re Sumpter)*, 136 B.R. 690, 694 (Bankr. E.D.Mich.1991), *aff'd* 170 B.R. 908 (E.D.Mich.1994); *Hubbell Steel Corp. v. Cook (In re Cook)*, 126 B.R. 261, 266 (Bankr. E.D.Tex.1991).

■ Section 727(a)(5) bars the discharge of a debtor who fails "to explain satisfactorily, before determination of denial of discharge under [§ 727(a) ], any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. § 727(a)(5). This section is intended to deter those who attempt to abuse the bankruptcy process "by obfuscating the true nature of [their] affairs, and then refusing to provide a credible explanation." *In re Johnson*, 98 B.R. 359, 366 (Bankr. N.D.Ill.1988) (quoting *First Federated Life Insurance v. Martin (In re Martin)*, 698 F.2d 883, 888 (7th Cir.1983)). This section does not require fraudulent intent. *Prairie Production Credit Assn v. Suttles (In re Suttles)*, 819 F.2d 764, 766 (7th Cir.1987). Nof has stated a *prima facie* case under § 727(a)(5) because he has established that Gannon took possession of the diamonds and presently has neither the diamonds nor the proceeds thereof. *See, e.g., Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 662 (Bankr.E.D.N.Y.1993) (to meet his burden, plaintiff must introduce some evidence of the disappearance of substantial assets); *ITT Commercial Finance Corp. v. Walz (In re Walz)*, 115 B.R. 353, 357 (Bankr.N.D.Fla. 1990) (plaintiff must prove that at one time debtor had substantial and identifiable assets available to satisfy the claims of his credi-

tors). Accordingly, Nof is entitled to judgment denying Gannon's discharge unless Gannon can prove that Schwartzkoff took the diamonds and has not paid for them. *In re Martin*, 698 F.2d at 886 ("[s]ection 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss or disappearance of assets" (citation omitted)). In doing so, debtor's explanation must satisfy the court of his "business like conduct and good faith" with respect to the diamonds. *In re Wolfson*, 139 B.R. at 288 (citing *United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 659 (Bankr.N.D.Ohio 1990)). It requires "much more in the way of explanation than vague generalities." *Sperling v. Cudahy Packing Co. (In re Sperling)*, 72 F.2d 259, 261 (2d Cir.1934). In *First American Bank of New York v. Bodenstein (In re Bodenstein)*, 168 B.R. 23 (Bankr.E.D.N.Y.1994), the court stated that for purposes of § 727(a)(5), a debtor's explanation of what happened to assets "must convince the bankruptcy judge that a debtor has not hidden or improperly shielded [them]" *Id.* at 33. That means " 'that the court, after having heard the excuse, the explanation, has the mental attitude which finds contentment in saying he believes the explanation—he believes what the [debtor] say[s] with reference to the disappearance or the shortage. He is satisfied. He no longer wonders. He is contented' ". *Id.* (quoting *In re Shapiro & Ornish*, 37 F.2d 403, 406 (N.D.Tex.1929), *aff'd sub nom. Shapiro & Ornish v. J.J. Holliday*, 37 F.2d 407 (5th Cir.1930)).

■ Gannon's inconsistent and frequently contradictory testimony with regard to his transactions with Schwartzkoff casts significant doubt on whether Schwartzkoff exists, let alone whether those transactions occurred. First, Gannon has not always identified "Schwartzkoff" as the transferee of the diamonds. Just prior to trial Gannon moved for leave to amend Schedule B of his chapter 7 petition to add his claim against Schwartzkoff on account of the lost diamonds as an asset. In support of that motion, he filed an affidavit in which he identified "David Strausberg" as the transferee of the stones.

*See* Affidavit Of Chaim Gannon In Support Of Motion To Amend Schedule B, Personal Property, Questions 17, 20 and 33 Of Debtor's Petition (the "Schedule B Affidavit") at ¶¶ 9–12.[3] Although Gannon blames his counsel for the error, *see* Trans. at p. 77, he signed the affidavit and must be held accountable for its accuracy. In relevant part, the affidavit states, as follows:

> In preparing the within petition in answering Schedule B, personal property questions 17, 20 and 33, I answered "0". It was my belief at that time that the money owed tome [sic] by Mr. Strausberg was uncollectible and that this was not a real receivable to my estate. Since that date and to date, I have collected no money from Mr. Strausberg, nor do I have an expectation of doing so in the future.

Schedule B Affidavit, ¶ 9. Presented with no conflicting evidence we credited that testimony and, over Nof's objection, granted debtor's motion after debtor's counsel acknowledged his error. However, Gannon further clouded the issue of the whereabouts of the diamonds by submitting an order authorizing the amendment to his Schedule B identifying the transferee of the stones as: "David Schwartz Koff". *See* Order Amending Schedule B, Personal Property, Questions 17, 20 and 33 Of Debtor's Petition, dated September 29, 1993.

At all times prior to the trial, Gannon claimed that he had not been able to recover the diamonds or the proceeds thereof because he could not locate Schwartzkoff. *See, e.g.,* Trans. at p. 197; Joint Pre–Trial, ¶ 7. On the first day of trial, however, Gannon testified that within the "couple of weeks" immediately preceding that day, he had learned where Schwartzkoff might be found and provided a telephone number where Schwartzkoff might be reached. *See* Trans. at pp. 57–58. Notwithstanding that Gannon's defense to this lawsuit rests exclusively on Schwartzkoff's alleged misdeeds, Gannon ap-parently did not attempt to compel Schwartzkoff's attendance at the trial. Gannon did adduce testimony from Nassani relating to Schwartzkoff. Nassani stated that on one or two occasions he saw Schwartzkoff at Milan Jewelry, a store in the diamond district where Gannon worked. *See* Trans. at p. 111. However, Nassani did not specify when that contact occurred, *id.* and while he admits that he did not meet Schwartzkoff, he failed to explain how he was able to identify the person he saw as Schwartzkoff. *Id.* That vague testimony is entitled to little weight, especially in light of Gannon's knowledge of Schwartzkoff's whereabouts on the date of the trial. Further, Nassani was not a disinterested witness. Gannon admitted that he and Nassani are friends, that he owes Nassani several hundred dollars on account of a post-petition loan, and that Nassani forgave a pre-petition debt of approximately $1300. *See* Trans. at pp. 80, 82; *see also* Trans. at p. 114 (Nassani admitted making $400 post-petition loan to Gannon).[4] Gannon also has taken inconsistent positions regarding the profit he expected to realize through each transaction with Schwartzkoff. In ¶ 11 of the Schedule B Affidavit, he asserted that he expected to earn a profit of at least $1,000 *per diamond* in his dealings with Schwartzkoff. At trial, however, he testified that the profit was to have been approximately $300 per stone. Trans. at pp. 216–17.

Gannon's inconsistent account for why he has failed to produce any documents evidencing the transactions with Schwartzkoff furthers our conclusion that he has failed to meet his burden under § 727(a)(5). Nof maintains—and Gannon agrees—that in the normal course of business in the diamond district, a broker does not surrender diamonds or other precious stones to a third party, let alone one he does not know well, without requiring the transferee to execute a memorandum similar to those which Gannon signed when he took delivery of Nof's

---

3. The parties submitted that affidavit as part of Jt. Ex. 10.

4. Notwithstanding Gannon and Nassani's relationship, Nof did not object to Nassani being qualified as an expert with respect to the operation of the wholesale diamond business in New York City. *See* Trans. at p. 91. Further, he did not object to Nassani's testimony regarding Schwartzkoff.

stones.[5] Short of an admission by Schwartzkoff that the transactions unfolded as Gannon alleges, the most probative evidence of those transactions likely would be memoranda—if they exist. Pre-trial, during his deposition, Gannon testified that he did not require Schwartzkoff to sign any memoranda when he took delivery of the stones. *See* Trans. at pp. 219–222. At trial, however, Gannon claimed that Schwartzkoff executed a memorandum each time he took a diamond, *see* Trans. at pp. 50, 62, 67, 70, 201–202, that Gannon retained those memoranda, *id.*, but that he cannot produce them because his ex-wife either destroyed or discarded them at or about the time of their 1991 divorce. Trans. at 50, 67, 70–71. Gannon did not even attempt to account for the inconsistencies between his deposition and trial testimony. That testimony appears calculated to conform his actions to the standards enunciated by Nassani at trial. Even if he did require Schwartzkoff to execute memoranda, he has not accounted for his failure to produce them. His uncorroborated, self-serving testimony is entitled to no weight.

▆▆▆ Having built his defense to this litigation on Schwartzkoff's alleged conversion of the diamonds, Gannon was bound to adduce evidence showing that Schwartzkoff exists and that the transactions unfolded in the manner he claims. His uneven testimony regarding critical aspects of his defense completely undermines the credibility of those statements. Because Gannon has failed to account for the diamonds, his discharge is denied pursuant to § 727(a)(5).[6]

Section 727(a)(4)(A) of the Code provides an additional ground for denying debtor's discharge. That section is intended to ensure "that adequate information is available to those interested in the administration of the bankruptcy estate without the need of examinations or investigations to determine whether the information is true." *Freidman v. Kaiser (In re Kaiser)*, 94 B.R. 779, 781 (Bankr.S.D.Fla.1988). Thus, a debtor shall be denied his discharge if he knowingly and fraudulently makes a false oath or account in connection with his case. *See* 11 U.S.C. § 727(a)(4)(A); *see also In re Kelly*, 135 B.R. 459, 461 (Bankr.S.D.N.Y.1992); *In re Arcuri*, 116 B.R. 873, 881 (Bankr.S.D.N.Y.1990).

▆▆▆ Complete disclosure of a debtor's financial condition is the touchstone in a bankruptcy case. *In re Arcuri*, 116 B.R. at 880; *Wortman v. Ridley (In re Ridley)*, 115 B.R. 731, 736–37 (Bankr.D.Mass.1990); *In re Bernard*, 99 B.R. 563, 570 (Bankr.S.D.N.Y. 1989); *First Federal Savings And Loan Assoc. of Raleigh v. Johnson (In re Johnson)*, 82 B.R. 801, 805 (Bankr.E.D.N.C.1988). Any matter bearing on the discovery of estate property or debtor's business dealings is ma-

5. Gannon did not testify with regard to that issue. However, Nassani testified as his expert that the practice in the industry is that when a broker delivers merchandise to a third party, the transferee is required to sign a memorandum containing, at a minimum, that person's name and address. Trans. at pp. 101–03. Although he stated that there are exceptions to that general rule, as when the broker knows the third party well and that individual only wants to hold the stone for a few hours, *id.*, they are not relevant here.

6. The parties stipulated that Gannon took the diamonds from Nof on consignment. *See* Joint Pre-Trial Order, ¶ 5. "While '[h]istorically, the consignment contract has been denominated as a "sale," regarded as "security," and treated as a "bailment" or "agency," the term "consignment sale" is a misnomer, since the efficacy of a consignment depends on a finding that no sale has been made.'" *In re Ide Jewelry Co., Inc.*, 75 B.R. 969, 973 (Bankr.S.D.N.Y.1987) (citations omitted). In the event the consignee files for bankruptcy after he takes possession of the consigned goods, but before he is vested with title, those goods are subject to the claims of the consignee's creditors if the consignee maintains a place of business at which he deals with goods of the kind involved, and the consignor fails to perfect its security interest therein, unless the consignor's interest in those goods is readily apparent by means of a sign at the place of business. *See* N.Y.U.C.C. §§ 2–326, 9–114, 9–203(1); *see also Toys Galore, Inc. v. Bush*, 437 N.Y.S.2d 227, 228, 108 Misc.2d 200, 201 (N.Y.Co.Ct.1981) (creditors alleging ownership of consigned goods which were sold at auction by consignee's assignee entitled to file a late claim and share proportionately with other creditors in the sale dividend).

Gannon did not maintain a place of business. Thus, even though Nof apparently took no steps to perfect his security interest in the diamonds, they would not be available to satisfy the claims of Gannon's general unsecured creditors. Nonetheless, Gannon's failure to account for them is actionable under § 727(a)(5). *See Morris Plan Industrial Bank v. Schorn*, 135 F.2d 538, 540 (2d Cir.1943).

320

terial for purposes of § 727(a)(4)(A). *See, e.g., In re Kelly*, 135 B.R. at 461; *In re Johnson*, 82 B.R. at 805. Thus, even worthless assets and unprofitable business transactions must be disclosed. *See In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984); *Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330 (2d Cir.1969) (per curiam); *In re Arcuri*, 116 B.R. at 881; *In re Johnson*, 82 B.R. at 805.

■■■ It is the pernicious debtor who is denied a discharge, not a debtor who was careless or failed to fully understand his attorney's instructions. *In re Kelly*, 135 B.R. at 461. Accordingly, the party objecting to debtor's discharge must show actual, not constructive, fraud. *Id.* However, "it is … widely recognized that reckless indifference to the truth is the equivalent of fraud," *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 316 (Bankr.E.D.N.Y.1991), and "a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraud." *In re Bailey*, 53 B.R. 732, 735 (Bankr.W.D.Ky.1985).

■■ Once the plaintiff makes a *prima facie* showing that debtor knowingly made a false oath, debtor must come forward with a credible explanation for his actions. *See First Texas Savings Assoc. v. Reed (In re Reed)*, 700 F.2d 986, 992–93 (5th Cir.1983); *In re Sapru*, 127 B.R. at 316. A failure to do so is a sufficient ground for denial of discharge. *In re Sapru*, 127 B.R. at 316.

■■■ A debtor's petition and annexed schedules constitute a statement under oath for purposes of § 727(a)(4)(A). *See In re Arcuri*, 116 B.R. at 880; *In re Bailey*, 53 B.R. at 735. Gannon admits that in ¶ 1 on the Statement of Financial Affairs made part of his voluntary chapter 7 petition, he knowingly failed to disclose the fact that he earned approximately $15,300 in 1990 and $10,000 in 1991. *See* Trans. at pp. 24–31, 183, 201. Likewise, he concedes that he knowingly failed to list his claim against Schwartzkoff on Schedule B—Personal Property to his Statement of Financial Affairs. *See, e.g.,* Schedule B Affidavit.

■ Gannon did not seek leave to amend Schedule B to add his claim against Schwartzkoff until after Nof commenced this litigation. Although we granted Gannon's motion, that amendment does not expunge the falsity of the petition. *In re Kelly*, 135 B.R. at 461 (citations omitted). The only evidence of record in this case regarding Gannon's failure to disclose his claim against Schwartzkoff is Gannon's Schedule B Affidavit. Based on the inconsistencies noted above between the facts alleged by Gannon in that affidavit and his trial testimony, we do not credit his explanation for why he failed to list the claim against Schwartzkoff.

■ In any event, Gannon provided *no* explanation for why he failed to disclose in his petition that he earned as much as $30,000 during the approximately 2½ year period leading up to the filing of his chapter 7 petition. Debtor filed his case as a "no asset" case. The schedules annexed to his petition showed a total of $300 in assets. The existence of undisclosed income earned pre-petition, in any amount, is relevant to an understanding of debtor's financial condition. In these circumstances, such as those presented here, Gannon's failure to disclose that information provides a basis for denying his discharge. There is an additional reason why Gannon's discharge should be denied under § 727(a)(4)(A). In ¶ 2 of his Statement of Financial Affairs, Gannon represented that he had no Income Other Than From Employment Or Operation Of Business. Nof charges that the representation is false because Gannon enjoyed income from his activities as a jewelry broker. He contends that Gannon knowingly and falsely failed to disclose it in an effort to deceive his creditors. Gannon offers two responses. First, he contends that he was not required to make disclosure because he is not in the business of brokering jewelry. Even if true, that contention is irrelevant because ¶ 2 assumes that the income is *not* derived from debtor's business. Moreover, that claim is at odds with the position Gannon took in the Civil Court Litigation where he admitted that he "was in the business of buying and selling diamonds and other valuable gems and

stones". *See* Answer at ¶ 2 [7]; Trans. at pp. 20–24. Further, at trial Gannon admitted that on numerous occasions he obtained jewelry or stones from dealers and showed them to customers or other brokers in an effort to sell them and realize a modest profit. *See* Trans. at pp. 33–36, 39–40, 199–200. Although he denied that he realized any income from those activities, *see* Trans. at p. 184, during his pre-trial deposition he admitted to earning at least $60 on one transaction. *See* Trans. at pp. 33–34. We find that the evidence supports a conclusion that Gannon acted as a broker of precious stones and jewelry. Even if, as Gannon contends, but we do not find, he earned little income from those endeavors, he should have disclosed it. Any matter pertinent to the discovery of assets is material and must be disclosed. *In re Kelly*, 135 B.R. at 461 (citing *In re Mascolo*, 505 F.2d 274, 277 (1st Cir.1974)).

■ The focus of §§ 727(a)(3) and 727(a)(4)(D) of the Code is on a debtor's duty to maintain and turn over recorded information which bears on his financial condition and business affairs. Section 727(a)(3) states that a debtor's discharge will be denied if:

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The purpose of this section is to provide creditors and the court "complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Meridian Bank v. Al-*

*ten*, 958 F.2d 1226, 1230 (3d Cir.1992). It also ensures that "creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." *Id.* Thus, the issue to be resolved when an objection to discharge founded on § 727(a)(3) is raised is whether debtor's records are adequate to explain his finances and, if not, whether the failure to do so is justified. *In re Reitz*, 69 B.R. 192, 197 (N.D.Ill.1986). "Once the moving party shows that the debtor has ... failed to produce records and that a demand for an explanation was made, the burden shifts to the debtor to justify the destruction or failure to produce records." *In re Hyder*, 38 B.R. 467, 471 (Bankr. D.Mass.1984). Section 727(a)(4)(D) bars the discharge of a debtor who knowingly or fraudulently withholds any recorded information relating to his property or financial affairs. 11 U.S.C. § 727(a)(4)(D).[8] *See Chicago Title Insurance Company, Inc. v. Mart (In re Mart)*, 87 B.R. 206, 210 (Bankr. S.D.Fla.1988); *In re Esposito*, 44 B.R. 817 (Bankr.S.D.N.Y.1984). *Collier* describes the application of this section, as follows:

Often the reason for knowingly and fraudulently withholding documents would be to cover up concealment or fraudulent transfer of assets, the failure to keep books and records, or one of the other offenses under section 723, although it is possible that a debtor might refuse to turn over documents, even though he had concealed no property, made no false oath or committed no other offense. It is likely that an offense under section 727(a)(4)(D) will be included, with other offense under § 727.

4 *Collier on Bankruptcy*, ¶ 727.07, at p. 727–70 (Lawrence P. King et al. eds., 15th ed. 1994) (footnote omitted).

■ Gannon maintains that he was a novice broker whose only sales were to

---

**7.** · "Answer" refers to the answer of Chaim Gannon verified on or about December 26, 1991 and filed in the Civil Court Litigation. It was submitted as part of Jt. Ex. 8 and 9.

**8.** Section 727(a)(4)(D) states that a debtor shall be granted a discharge, unless:

[T]he debtor knowingly and fraudulently, in or in connection with the case

\* \* \* \* \* \*

(D) withheld from an officer of the estate entitled to possession under this title, any recorded

information, including books, documents, records, and papers relating to the debtor's property or financial affairs[.]

11 U.S.C. § 727(a)(4)(D).

Schwartzkoff. *See, e.g.,* Trans. at pp. 184–85. He contends the only documents he has ever possessed relating to his brokering activities are memoranda Schwartzkoff allegedly signed for each diamond he received from Gannon. We do not credit Gannon's explanation for why he does not have records relating to the Schwartzkoff transactions and do not believe that Gannon who represents himself as being in the business of buying and selling diamonds and other valuable stones, was only involved in the few transactions he acknowledged. Gannon has not accounted for his failure to produce any records relating to his brokering activities. Plainly, those records are relevant to an understanding of debtor's financial condition. Accordingly, §§ 727(a)(3) and (a)(4)(D) provide additional bases for denying Gannon his discharge.

Having determined that Gannon's discharge must be denied, we need not address Nof's assertion that his debt is excepted from discharge pursuant to § 523(a)(2)(B) and (a)(6).

### Conclusion

Based on the foregoing, Gannon is denied his discharge in bankruptcy.

SETTLE ORDER.